## JAMES BRENNAN AND JOHN McHUGH *v.* JAS. WALLACE, MARY WALLACE, AND DANIEL SHEEHAN.

HOMESTEAD—ABANDONMENT OF.—If both husband and wife removed from a homestead acquired and held under the law as it existed before the amendments of 1860, whether the removal was only temporary, or was an abandonment of the homestead and intended to be permanent, are questions of fact to be determined by the Court from all the evidence.

IDEM—EVIDENCE OF ABANDONMENT.—The declarations of the husband in relation to an abandonment of a homestead, acquired before the amendments of 1860 to the homestead law, and before a declaration of homestead had been filed under said amendments, are admissible in evidence in an action against both husband and wife, where the fact of abandonment is in issue.

IDEM.—A declaration of abandonment of a homestead, acquired by actual occupancy previous to 1860, made and acknowledged by both husband and wife, and recorded before any declaration of homestead had been made, is admissible in evidence, as a fact tending to show an actual abandonment.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*John F. Swift* and *Selden S. Wright,* for Appellants.

We contend that the declaration of abandonment was inadmissible for any purpose.

That it could not show or *tend* to show an actual abandonment, and no other kind of an abandonment could help the plaintiff's case.

That a *declaration of abandonment* could be applicable alone *after* the filing of the original declaration.

In the case before us, the declaration was filed not until April, 1862, when the declaration of abandonment was made in August, 1860.

The purpose of such declaration as provided for in the Act, was to work an estoppel against the husband and wife *after* they had acquired their rights under the amendments of 1860.

It made no difference, after these rights were so held, whether the declaration was true or not true; it made no difference whether they actually abandoned or not; they might continue to use the homestead as such in fact, yet they would be estopped by this declaration of abandonment.

On the other hand, before the amendment of 1860 took effect, a simple declaration of abandonment, without an actual abandonment, would amount to nothing.

More particularly is it inadmissible against Mrs. Wallace, who is a married woman, and cannot be estopped by any mere declarations, however made, unless in requirement of law. The same would exclude the declarations of Wallace, as testified to by the witness O'Farrell.

These declarations ought to have been excluded as testimony in this cause. Having been admitted, this Court cannot say how much weight it has had in influencing the conclusion of the Court below in its findings of fact.

Apart from this declaration, the testimony establishes the fact that Wallace went away for his health with the intention of returning, and that he carried that intention into effect.

*R. Tobin*, for Respondents.

By the Court, CURREY, J.

This action was brought to recover against James Wallace the amount due on a promissory note by him made and delivered to the plaintiffs on 28th of December, 1860, payable twelve months after that date, and to foreclose a mortgage executed by him on the same day on a certain piece of land in San Francisco, to secure the payment of the note. Mrs. Wallace was not a party to this mortgage.

The defense made is that the mortgaged premises were the homestead of the defendants at the time the mortgage was executed and so remained at the commencement of this action. A great amount of evidence was produced at the trial, upon which the Court rendered judgment against the defendant James Wallace, and a decree for the foreclosure of the mortgage and the sale of the mortgaged premises. Thereupon the defendants moved for a new trial and it was denied.

The defendants have assigned several causes as grounds why, as they claim, the judgment should be reversed.

First—Because of the insufficiency of the evidence to justify the findings of the Court and the judgment entered in the cause.

The specific causes assigned under the general ground stated are in substance as follows : First—That the evidence failed to show that the defendants removed from the mortgaged premises with the intention to abandom them as their homestead, or that they intended to permanently reside elsewhere. Second—That the evidence did not establish the fact that defendants did not reside on the premises when the note and mortgage were made, nor that they did not then intend to re-occupy the same premises as their homestead. Third—That the evidence showed that long before the note and mortgage were made, and from thence to the time of the trial, the premises were defendants' homestead. Fourth—That the evidence showed that the absence of defendants from the premises was but temporary, and was occasioned by the bad health of the defendant James Wallace, while it did appear from the evi-

dence that defendants' intention always was, during their absence, to return to the premises.

Testimony was given by several witnesses on the trial, showing that the defendants were induced to remove to Contra Costa on the account of the infirm condition of the defendant James Wallace, and it clearly appeared, and was not attempted to be controverted as a fact, that from the month of February, 1860, to November, 1862, the defendants lived upon a farm in Contra Costa County, where they were engaged in the business of farming, during which period the note and mortgage were executed and delivered. It was proved on the trial that the defendants resided on the mortgaged premises and occupied the same as their homestead from some time in 1851 until they removed to Contra Costa, early in 1860. Whether they intended to reside in that county permanently was a question to be determined, if it was of any particular importance, from the evidence before the Court; and so, too, whether they intended to abandon their homestead—the mortgaged premises—was a fact to be ascertained from the evidence. If the Court was authorized in finding that defendants abandoned their homestead before the mortgage was executed, then it is a matter of no moment what cause induced them to the step, nor whether or not they intended to reside permanently in Contra Costa.

In *Cook* v. *McChristian*, 4 Cal. 26, the Court say the homestead is the dwelling place of the family, and that by the common law such residence would raise the presumption that the premises so held were the homestead; and in *Harper and Wife* v. *Forbes*, 15 Cal. 203, the Court hold that occupancy of premises by the husband with his family is presumptive evidence of their appropriation as a homestead, and that the removal of the husband with his family from the premises thus appropriated is in like manner presumptive evidence of their abandonment as a homestead. When a fact is established by the proved existence of facts and circumstances from which it is presumed, it becomes conclusive unless rebutted by other evidence in the cause. In the case last cited the Court, in under-

taking to enumerate circumstances from which the presumption of abandonment, when once established, might be rebutted, say "it must appear that the removal was temporary in its nature, made for a specific purpose, with the intention of re-occupying the premises. The necessities of the family, their maintenance, their health, or the education of the children, may often require a temporary change of residence. In such cases the premises will still retain their original character as a homestead."

There can be no disputing the fact that the premises in controversy became the homestead of the defendants many years before their removal to Contra Costa County, and continued their homestead until their removal; and it may be it so remained some time thereafter, because their change of residence may have been intended to be but temporary; but whether their intention to return to the premises as their homestead existed at the date of the note and mortgage, was a question to be decided by the Court that tried the cause. If the decision that the premises were at that time abandoned as a homestead was warranted upon a fair consideration of the evidence, notwithstanding the necessities which induced the defendants' removal, and notwithstanding they may have intended at that time that their absence should be but temporary, this Court would not be authorized, in the proper exercise of its revising powers, to disturb the judgment.

The evidence shows that on the 8th of August, 1860, the defendants executed and acknowledged before a Notary Public an instrument in writing declaring that they abandoned all claim to the premises as a homestead. The note and mortgage, as already appears, were executed and delivered on the 28th of December following; and it can hardly be supposed that this written instrument, declaring that the defendants abandoned all claim to the premises as a homestead was without its effect in inducing the plaintiffs to accept the mortgage as security for the amount specified in the note; but whether this was the fact or otherwise, the solemn declaration of the parties that they abandoned all claim to the premises as a

homestead furnished the Court with cogent evidence of their intention, and we think authorized the finding of the issue on that point against the defendants.

The declaration of homestead executed and acknowledged by James Wallace on the 21st of March, 1862, though it may have been effectual as a claim of homestead from that time, could not rescue the property from the lien of the mortgage created thereon more than a year before then, and at a time when the premises had lost, by abandonment, the character of the homestead of the defendants.

Second—The appellants make the point that the judgment is against law, because the Court found as a conclusion that the mortgaged premises were not the homestead of defendants when the mortgage was executed and delivered.

This point is essentially involved in the question already considered and is disposed of by our determination of that question.

Third—The appellants' third ground of objection to the decision and judgment is that the Court erred: 1st. In permitting the declarations of the defendant, James Wallace, to be given in evidence against both defendants, notwithstanding the objection thereto made on behalf of Mrs. Wallace; and 2d. By permitting to be read in evidence against both defendants the declaration of abandonment of all claim of homestead right of the defendants in the mortgaged premises, notwithstanding the defendants' objection thereto.

The question by which the evidence was elicited as to Mr. Wallace's declaration, was as to what he said about the homestead right in the premises at the time the mortgage was executed. This question was objected to on behalf of Mrs. Wallace, on the ground that the declaration of her husband was not competent to bind her. The Court overruled the objection and she excepted.

The answer of the witness was, that there was something said about a prior mortgage, and that as he, Wallace, lived across the Bay, he had no claim to the mortgaged premises as a homestead. The witness then stated in substance that about

the month of September, 1861, he told Wallace that his wife spoke of setting up a claim of homestead to the premises, when Wallace repudiated the idea.

The question involved in this point is one of importance, and not entirely free of embarrassment. In a number of cases, heretofore decided, the homestead has been regarded as of the nature of an estate held in joint tenancy by the husband and wife, (*Taylor* v. *Hargous*, 4 Cal. 268; *Holden* v. *Pinney*, 6 Cal. 235; *Revalk* v. *Kraemer*, 8 Cal. 73; *Estate of Buchanan*, 8 Cal. 509; *Estate of Tompkins*, 12 Cal. 125,) and that there could be no abandonment of the homestead except by their joint action; and hence it is sometimes argued, that as the homestead could not be aliened or abandoned except by the concurrent action or conduct of the husband and wife, it follows as a logical sequence from the premises that the act or declaration of one of the spouses to show an alienation or abandonment could not affect the other, or have the effect to extinguish the homestead quality that had become incorporated into the property once dedicated as a homestead by actual occupancy. There is much force in this reasoning, if the premises assumed be true.

In *Gee* v. *Moore*, 14 Cal. 474, Mr. Chief Justice Field said there was nothing in the nature of the homestead right which justified its designation as the joint estate of the husband and wife, with the right of survivorship, as had been held in former cases; and he declared that such a doctrine never met the approbation of the profession and was not warranted by any language of the Constitution or the statute; and he then says: "The estate rests where it existed before the premises were appropriated as a homestead. The appropriation of them confers a right upon the wife to insist that their character as a homestead shall continue until she consents to their alienation, or another homestead is provided, or they are otherwise abandoned." And in *Guiod* v. *Guiod*, 14 Cal. 507, the same learned Judge said: "The statute confers upon the wife no right to the homestead, independent of the husband, which she can enforce against his consent. It affords protection to him, and

only through him to the wife and children. It does not purport to interfere with the natural dependence of the latter upon the former. She is bound by her marital obligations to live with him, and when he changes his place of residence she must accompany him. * * * As by his act the premises were originally impressed with the character of homestead, so by his act they may be abandoned as such."

The question of the abandonment of the homestead in this case was a matter in issue and to be passed upon by the Court from all the evidence—consisting of acts and declarations of the defendants, and mostly those of the husband. His declarations made during his residence in Contra Costa, and especially at the time the note and mortgage were executed, might properly be regarded as of the *res gestæ*, and considered as a part of the series of acts and circumstances, which, it was claimed on the part of the plaintiffs, went to establish the fact of abandonment of the mortgaged premises as the homestead of the defendants.

If the wife was bound by the acts of her husband (whom she accompanied in his removal to Contra Costa County) showing or tending to establish an abandonment of the homestead—a fact which seems to result from the doctrines laid down in *Gee* v. *Moore* and *Guiod* v. *Guiod*—then there seems to be no valid objection to proving his declarations for the purpose of showing his intention by his removal to abandon his homestead which he was about to mortgage to secure the note then made and delivered. This disposes of the first alleged error specified in the third point made by the appellants in their assignment of errors, and we next proceed to consider the second objection therein specified.

The respondents produced in evidence the instrument in writing bearing date the 8th day of August, 1860, and to which we have already referred, executed and acknowledged by the defendants before a Notary Public, and which was recorded, by which they declared they abandoned all claim to the premises as a homestead. The appellants objected to this evidence when it was offered, on the ground that so far as

Mrs. Wallace was concerned it was irrelevant and immaterial, and the document being received in evidence the appellants excepted.

The grounds on which the appellants' counsel seek to maintain their objection is that as the homestead right was acquired under statutes that existed before 1860, such right could not be lost or impaired by means of any provisions contained in the Act of 1860, and subsequent Acts amendatory thereof concerning homesteads; and that until the declaration of homestead was made and filed by James Wallace, in March 1862, the appellants held their homestead subject to the law as it stood prior to 1860; and that, upon the authority of *Cohen* v. *Davis*, 20 Cal. 195, the declaration of abandonment made and filed in August, 1860, was abortive as an abandonment under the Act of 1860, because at that time no original declaration of claim of the premises as a homestead had been made and filed under and in pursuance of the provisions of that Act.

The homestead of the appellants, as we have seen, was created under the law as it stood prior to 1860, and the circumstances that would work an abandonment of it were the same afterwards as before then, with the additional one, perhaps, that would result from omitting to file the declaration required by the fifth section of the Act of 1860, or by the Acts subsequently passed extending the time within which to comply with the requirements of such fifth section, and whatever circumstances transpired before the appellant, James Wallace, made and filed his declaration in the spring of 1862, tending to establish the fact that the appellants abandoned their homestead, were admissible in evidence for the purpose of proving the fact of abandonment; and though the written declaration made by the appellants in August, 1860, may not have operated of itself as effecting an abandonment, it was evidence of a convincing character of the truth of the appellants' declaration thereby made in an unmistakable and solemn form.    We think the judgment should be affirmed.

Judgment affirmed.

Mr. Justice SHAFTER expressed no opinion.