# Wheeling.

### Speidel & Co. v. Schlosser, et al.

Decided April 26, 1879.

<span style="margin-left:2em">1879<br>Special Term.</span>

1. Section 48 Art. 6 Constitution does not *ex proprio vigore* confer a right to a homestead. It simply imposed on the Legislature the duty to pass an act, whereby a homstead of not less than $1,000.00 might be claimed by any husband or parent, residing in this State, or the infant children of deceased parents, which should be exempt from forced sale for debts or liabilities, other than those named in the said section 48, as deemed proper by the Legislature.

2. The Legislature had the right to require the making, acknowledging and recording the declaration of homestead, as prescribed in section 9 of the homestead act of December 20th, 1873.

3. Section 10 of said act, in prescribing, that after the first day of March, 1874, no person, who has not made and recorded such declaration of intention, shall have the benefit of such home·stead as to debts contracted before the recording of such declaration, is constitutional; but whehter if recorded before or on the first day of March, 1874, he could have had the benefit of homestead exemption as to debts contracted before that date but subsequent to the adoption of the Constitution, is a question not presented by this case, and will not be decided in this case.

4. The court should have decreed a time, within which the defendant should pay the judgment, and upon his failure so to do, then sale to be made.

5. The court erred in confirming the report of the commissioner, as there were fatal defects apparent on its face, not remedied by the pleading or evidence.

Appeal from and *supersedeas* to a decree of the municipal court of Wheeling, rendered on the 21st day of August, 1875, in a cause in said court then pending, in which Joseph Speidel & Co. were plaintiffs, and Christian Schlosser and others were defendants, granted on the petition of said Schlosser.

Hon. G. L. Cranmer, Judge of the municipal court of Wheeling, rendered the decree appealed from.

MOORE, JUDGE, furnishes the following statement of the case:

The plaintiffs filed in the municipal court of Wheeling a bill in Chancery against the defendant, to enforce a judgment lien. The bill alleges, that the judgment was recorded on or about November 27, 1874, in said municipal court against defendant for the sum of $313.75, and costs $16.35; that *fi. fa.* issued thereon December 8, 1874, which was levied on the goods and chattels of defendant; from the sale of which goods and chattels, under said *fi. fa.*, the sum of $58.13 was realized to be applied in part satisfaction of said judgment and costs, and costs of execution. That on or about January 13, 1870, George Crumbacker and Elizabeth C. his wife, executed a deed of conveyance in fee simple to defendant, conveying to him the west twenty-five feet of lot 174, situated on the north side of Zane street, in East Wheeling, in consideration of $1,800.00; that on or about January 13, 1870, defendant and his wife executed a deed of trust, conveying said lot to A. J. Clarke, trustee, to secure said Crumbacker the payment of $1,500.00, balance of purchase money on said lot. Plaintiffs aver, that at the time of awarding the judgment and issuing the execution thereon defendant was lawfully seized in fee simple of said real estate, and still remains so seized thereof; and that by said judgment they have acquired a lien on said real estate, and pray the enforcement thereof.

The court heard the cause upon the process, &c., the bill and exhibits taken for confessed, and on the 22d day

of March, 1875, decreed, that the cause be referred to master commissioner Lewis S. Jordan, to inquire into, ascertain and report: 1st. The value of the real estate mentioned and described in the bill ; 2d. The liens upon the same, to whom due, their amounts and respective priorities ; 3d. Any other matters deemed pertinent by the said commissioner, or demanded by any of the parties.

On the 8th day of July, 1875, defendant was allowed to file his answer to the bill. He admits the allegations of plaintiffs' bill, but further answering, says : that on the 25th day of August, 1874, he under section 48, article 6, of the Constitution and the laws of the State, made under such section, filed his declaration of intention to hold the said real estate as a homestead of the value of $1,000.00 exempt from forced sale ; that said declaration was made in due form of law, and recorded on the 26th day August, 1874, in the clerk's office of the county court of Ohio county, in Homestead Book No. 1, page 3, (which declaration is filed with the answer as exhibit A.), and insisting upon his right to hold the property mentioned as a homestead, &c., prays the court, that in any order or decree for the sale of said property, his homestead to the value of $1,000.00 may be reserved and protected.

The plaintiffs excepted to the filing of the defendant's answer, "for the reason that it sets up no grounds, and sets forth no facts, which would prevent the court from granting the relief prayed for in the bill." On the 24th day of July, 1875, the court sustained the exceptions to defendant's answer.

Commissioner Jordan reported the value of the real estate to be $1,200.00; that there is a deed of trust on said property, executed by defendant and wife, to secure George Crumbacker $1,500.00, the balance of the purchase money, but that the $1,500.00 has been paid with the exception of $600.00, with interest, which is still due, and is the first lien. That the plaintiffs have a lien against

the real estate for $313.75, with interest thereon from November 27, 1874, till paid, by virtue of their judgment rendered November 27, 1874, subject to a credit December 21, 1874, of $58.13, money received on execution on said judgment, out of which is to be deducted $16.35 costs taxed by the clerk, leaving a clear credit on said judgment of $41.78, which leaves a balance as a lien against the said property of $271.97, which is the second lien on said real estate.

He further finds, that the debt, on which the judgment was rendered, was contracted before the recording of the defendant's declaration of homestead on the property mentioned ; and that the defendant recorded his declaration of intention to hold the said premises as a homestead, August 26, 1874.

The court, on the 21st of August, 1875, confirmed said report, no exceptions having been taken thereto, and decreed, that the said real estate be sold for the satisfaction of said judgment lien, and the discharge of the liens upon the same.

From this decree Christian Schlosser obtained an appeal and *supersedeas* to this Court.

*J. M. Mason*, for the appellant, cited the following authorites :

Con. W. Va., art. vi. sec. 48 ; 15 Pet. 449 ; *Jackson* v. *Collins*, 16 B. Mon.; Cooley Conct. Lim. ; *Lowe* v *Com.*, 3 Met. (Ky.); *Speed* v. *Com.*, *Id.*; 30 Conn. 599 ; 4 Md. 223 ; 10 Gratt. 652 ; 2 Otto 218 ; *State* v. *Mace*, 5 Md.; 6 Cranch 307 ; 18 Gratt. 85 ; *McCollom* v. *Pipe*, 7 Kans.; *Bowie* v. *Lott*, 24 La. Ann. ; 4 Wall. 553 ; 44 N. H. 404 ; 12 Mass. 485 ; 1 Doug. (Mich) 357 ; 39 Mo. 489 ; 24 Mich. 59 ; 9 Wheat. 196 ; 2 Duval (Ky.) 20 ; 3 Esp. 81 ; 2 B. & A. 413 ; 15 Wall. 15.

*George O. Davenport*, for appellees, cited the following authorities :

Con. W. Va., art. vi. §48; Acts 1872–3, ch. 193, §10 ;

*1879 Special Term.*

*Speidel & Co.*
*v.*
*Schlosser et al.*

*Id.* §15; 3 Min. 53; 11 Min. 475; 7 Min. 465; 27 Ark. 648; 3 Washburn Real Property 326; 54 Mo. 578; 38 N. H. 69; 46 N. H. 44; 25 Ill. 612; 21 Ill. 40; 18 Tex. 413; 25 Ark. 101; 3 Nev. 182; 47 Cal. 60; 4 Nev. 378; 1 Clark (N. Y.) Ch. 98; 2 Edward's Ch. 98; 16 Min. 159; 1 Casey 25; Rev. Stat. 232; 4 N. H. 282; 43 Ill. 232; 16 Cal. 219; 28 Vt. 544; 10 Mich. 291; 12 Allen 30; 13 Allen 286; 26 Barb. 374; 5 Minn. 337; 10 Cal. 17; 17 Cal. 403; 46 Cal. 289; 36 Barb. 571; 38 N. H. 62; 65 N. C. 447; 3 Nev. 182; 46 Cal. 289; 15 Tex. 176; 10 Cal. 293; 11 Nev. 260; 11 Iowa 93; 14 Iowa 240; 30 Wis. 306; Thompson on Homestead and Exemptions, §307, and cases cited.

*Taylor & Barr*, for appellees, cited the following authorities:

Con. W. Va., art. vi. §48; Acts 1872-3, ch. 193; Cooley on Cons. Lim. 58, 87, 88; 8 W. Va. 74; *Id.* 612; Thompson on Homesteads and Exemptions, §§4, 5 and cases cited; 24 Cal. 639; 54 Ga. 355; Thompson on Homesteads and Exemptions, §§17, 18, 19; *Id.* §307.

MOORE, JUDGE, delivered the opinion of the Court:

The appellant's first assignment is, that the court erred in sustaining the exception to the answer.

The only defense the answer attempts to make to the bill is, that the defendant on the 26th day of August, 1874, recorded his declaration of intention to hold the real estate, described in the bill, as a homestead exempt from forced sale, under and by virtue of art. 6, sec. 48 Constitution, and the laws of the State made in pursuance to said section 48.

The appellees argue, that the appellant was not entitled to hold the property exempt from the satisfaction of this debt, by virtue of the constitutional provision referred to, and the legislation in relation thereto.

Section 48, of art. 6, Constitution, ordains that: "any husband or parent, residing in this State, or the infant

children of deceased parents, may hold a homestead of the value of $1.000.00, and personal property to the value of $200.00, exempt from forced sale *subject to such regulations as shall be prescribed by law: Provided,* that such homestead exemption shall in no wise affect debts or liabilities existing at the time of the adoption of this Constitution: *And, provided further,* that no property shall be exempt from sale for taxes due thereon, or for the payment of purchase money due upon said property, or for debts contracted for the erection of improvements thereon."

The Constitution became operative and in full force from and including the 4th Thursday of August, 1872, which was the 22d day August, 1872. *Schedule, sec.* 6.

*An Act,* providing for homesteads, and exemptions from forced sales of personal property in certain cases, *chapter* 193, Acts 1872-3, p. 554, was approved December 20, 1873. The first section declares: "That any husband or parent residing in this State, or the infant children of deceased parents, may hold a homestead of the value of $1,000.00, and personal property to the value of $200.00, exempt from forced sales, subject to the following regulations and provisions:" The sections following, up to section eight, relate to personal property. *Section* 8 declares: "Any husband or parent, residing in this State, or the infant children of deceased parents, may hold a homestead of the value of $1,000.00 exempt from forced sale: *Provided,* That such homestead exemption shall in nowise affect debts or liabilities existing on the 22d of August, 1872; *and provided further,* that no property shall be exempt from sale for taxes due thereon, or for the payment of purchase money due upon such property, or for debts contracted for the erection of improvements thereon."

*Section* 9 declares: "Any husband, or parent, desiring to obtain the benefit of such homestead shall make a declaration of such intention, and therein describe with convenient certainty such homestead, so that it may be

distinguised from other property." * * * * "which declaration of said intention shall be acknowledged before some officer authorized to take acknowledgments of deeds for record, which the party shall have duly recorded in the clerk's office of the county court of the county, in which such homestead is situated, in a book to be kept for that purpose."

*Section* 10 declares: "That no person, after the first day of March next, who has not made and had recorded such declaration of intention, shall have the benefit of such homestead as to debts contracted before the recording of such declaration."

It is argued, that as to this case the tenth section of the act is in conflict with said 48th section of article 6 of the Constitution, and that said constitutional provision acts *ex proprio vigore* in conferring the homestead. The learned counsel admit, what I find after critical research to be true, that the books of authority furnish no guide, no rule, that can specifically govern us in the solution of the question, because as to this constitutional provision and this homestead act there are none similar. Hence, in the main, we are to be governed by general principles, and by such light, as decisions of other courts have shed on constitutional and statutory provisions, that, although not similar, may bear a faint analogy to ours.

As a *postulatum,* we must start with the principle, so often adjudicated by the highest judicial tribunals of the land, that it may now be considered axiomatic, that "*every statute is presumed to be constitutional.*" The judiciary can only arrest the execution of a statute, when it conflicts with the Constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the law making power. *Railroad Co.* v. *Whiteneck,* 8 Ind. 222. The courts are not at liberty to declare statutes void, because of their apparent injustice or impolicy; neither can they do so, because they appear to the minds of the judges to violate fundamental principles of republican government, unless it shall be found, that those

principles are placed beyond legislative encroachment by the Constitution. *Cooley's Con. Lim.* 169, and notes.

The duty of the Court to uphold a statute, when the conflict between it and the Constitution is not clear, and the implication, which must always exist, that no violation has been intended by the Legislature, may require it in some cases, where the meaning of the Constitution is not in doubt, to lean in favor of such a construction of the statute, as might not at first view seem most obvious and natural. For as a conflict between the statute and the Constitution is not to be implied, it would seem to follow, where the meaning of the Constitution is clear, *that the court, if possible, must give the statute such a construction, as will enable it to have effect.*

This is only saying, in another form of words, that the court must construe the statute in accordance with the legislative intent, since it is always to be presumed, that the Legislature designed the statute to take effect, and not to be a nullity. *Cooley's Con. Lim.* 184.

In the case before us, the meaning of the Constitution is not in doubt. The framers of the Constitution have used language, evidently intended to be taken in its plain, common, natural meaning, viz : " Any husband or parent, * * * or the infant children of deceased parents, *may* hold a homestead of the value of $1,000.00, * * exempt from forced sale *subject to such regulations as shall be prescribed by law.*"

By the first section of article 11, of the Virginia Constitution it is ordained, as stated in *Reed, &c.* v. *Union Bank, &c.* 29 Gratt. 722, that : " Every householder, or head of a family, *shall be entitled to hold exempt* from levy, &c. property to the value of not exceeding $2,000.00, to be selected by him." Judge Christian, in delivering the opinion of the Supreme Court of Appeals, in *Reed, &c.* v. *Union Bank, &c.,* 29 Gratt. 723, held, that the expression, " *shall be entitled to hold,*" " plainly means, that he may, if he chooses, have the right to hold such property, as he may choose to select and set apart as his home-

1879
Special Term

Speidel & Co.
v.
Schlosser et al.

stead," * * *. "The privilege given by the Constitution is a personal privilege to be exercised by him, or not, as he chooses." If therefore the emphatic expression, "*shall be entitled to hold*," means, that the householder, or head of the family, "may, if he chooses, have the right to hold," certainly it cannot be questioned, that the expression "*may hold a homestead*," admits of no broader interpretation. But we are to consider the provision in our Constitution as merely intended to impose a duty upon the Legislature of conferring a right of homestead upon the husband, or parent, or infant children of deceased parents, to be exercised, or not, at their option, respectively.

It is well said by Judge Christian, after referring to the language adopted by the framers of the Virginia Constitution, and the Legislature carrying out the constitutional provisions, that : " It is plain, that by such language, especially in the light of that used by the Constitutions of other States, and the decisions under them, it never was intended to declare, that a man's dominion over his own property should be taken away without his consent."

So too, I think, the language of our Constitution shows clearly, that the framers thereof did not intend to declare, that man's dominion over his own property should be taken away without his consent. Hence it was right and proper for the Constitution to direct the Legislature to leave it to the election of the husband or parent, or the children of deceased parents, to hold a homestead, or not.

The same principle is recognized in Georgia. The Georgia Constitution of 1878, declared, that "each head of a family, or guardian, or trustee of a family of minor children, shall be entitled to a homestead of realty to the value of $2,000.00 in specie, which, when set apart, is exempt from levy or sale, except for taxes, money borrowed and expended in the improvement of the homestead, or for the purchase money of the same, and

for labor done thereon, or material furnished therefor, or removal of encumbrances thereon."

Chief Justice Warner, in delivering the opinion, in *Simmons* v. *Anderson,* 56 Ga. 55, upon the power of Simmons to *waive* his right, as the head of a family, to claim a homestead in the *property* described in the mortgage, &c., held : " When the Constitution declares, that each head of a family shall be entitled to a homestead in realty to the value of $2,000.00 in specie, it was not intended, that it should be *compulsory* on each head of a family to take a homestead in his land, whether he desired to do so, or not. The obvious and fair construction of this clause of the Constitution is, that each head of a family should be *entitled* to a homestead, as therein provided, if he desired to have one, and not otherwise. When Mr. Simmons borrowed the money, and executed his mortgage deed to secure its payment, he stipulated, under his hand and seal, that he waived for himself and family all right to a homestead in the mortgaged premises; in other words, he declared, that, as the head of a family, he did not desire to have a homestead on that land so mortgaged. As the head of his family and the owner of the land, he could have made an absolute sale of it, and thus have defeated all claims of his family to a homestead on the land. Why, as the head of his family and owner of the land, could he not stipulate, that he would not claim a homestead on it, the more especially if he did not desire to have one?"

Again, that it was not the intention for the 48th section of the Constitution to operate *per se,* as vesting a homestead, is manifested by the broad declaration : "*subject to such regulations as shall be prescribed by law ;* " thus showing that the Constitution, in that respect, was intended to be inoperative, until put into effect by legislative enactments.

In the case of *Groves et al.* v. *Slaughter,* 15 Pet. 449, the Supreme Court of the United States considered the question, whether, or not, the 2d section of the Con-

1879
Special Term.
Speidel & Co.
v.
Schlosser et al.

stitution of Mississippi, adopted in 1832, was to be considered inoperative without some legislative provisions to carry it into effect. The provision in said 2d section was as follows : "The introduction of slaves into this State, as merchandise, or for sale, shall be prohibited from and after the first day of May, 1833 : provided, the actual settler or settlers shall not be prohibited from purchasing slaves in any State in this Union, and bringing them into this State for their own individual use, till the year 1845."

The case was an action upon a promissory note given in the State of Mississippi, for the purchase of slaves in that State. The slaves had been imported in 1835-6, as merchandise, or for sale, into Mississippi by a non-resident of that State. It was contended by the parties to the note, that the contract was void : asserting that it was made in violation of the provision of the Constitution of Mississippi, which, it was insisted, was operative after May 1, 1833, without legislative enactment to carry the same into effect. Held by the court, that the prohibition of the Constitution did not invalidate the contract; but that an act of the legislature of the State was required to carry it into effect; and no law on the subject of the prohibition in the Constitution was passed until 1837 ; that the language of the Constitution obviously pointed to something more to be done, and looked to some future time, not only for its fulfillment, but for the means by which it was to be accomplished. But the mere grammatical construction ought not to control the interpretation, unless it is warranted by the general scope and object of the provision.

This case was noted for the ability, with which it was discussed, and the full and grave consideration it received from the eminent jurist, who then adorned that high court, and in my opinion is conclusive as to the interpretation to be given to the 48th section of article 6 of our Constitution : that it does not act *ex proprio vigore*.

See also *Slack, &c.* v. *Maysville, and Lexington R. R. Co.*, 13 B. Mon. 1; *Cass* v. *Dillon*, 2 Ohio St. 607; *Williams* v. *Mayor, etc. of Detroit*, 2 Mich. 560.

It is also argued, that the constitutional clause was intended for the especial protection of the wife and children against the acts of an improvident husband.

The language of the Constitution is plain, and certainly does not admit of an interpretation so broad in favor of the wife and children. As it was not the intention of the constitutional provision to interfere with man's dominion over his own property, it certainly is not reasonable to suppose, that it would, against public policy, interfere with his marital and parental authority. If he has dominion over his own property, he has the right absolute to dispose of it, as he pleases. It might be to his advantage, and conducive to the interest of his family, socially and pecuniarily, to sell his property and change his residence, or domicil, to another State or country; but if the wife and children have a substantive right in homestead, it is plain to see he would be at their mercy in the disposal of his realty, and instead of being the head of the family, to provide for it out of his own property according to his own judgment, and to govern his family according to the established notions of civilization, he would be made subject in many instances to the whims of an inconsiderate wife, and the foolish caprice of insubordinate children. But the language of our Constitution does not admit of an interpretation that would open the door to such folly.

The Constitution, as before stated, does not create a homestead, *per se*, but it imposes on the Legislature a duty to pass an act conferring upon three classes the right to hold a homestead exempt from forced sale, for such debts, other than those named in the Constitution, as the Legislature should think proper; and these three classes are: 1st. Husbands. 2d. Parents. 3d. Infant children of deceased parents. It is a right that may be exercised or not, at the option, first of the husband only,

whilst the marital relation exists; second by the father or mother, where the marital relation has ceased; and third by the infant child or children after the death of the parents.

"The general rule, applicable alike to the homestead, the chattel exemption, and the temporary allowance accorded to widows and orphans, is, that while the parents, or either of them, live and remain *sui juris*, the minor children have no substantive right in these bounties, which they can assert independently of the parents, or against them. On the contrary, the rights of the children are in such subordination to those of the parents, that whatever concludes the latter will equally conclude the former." See Thompson on Homestead, §§42, 43, and notes. *Idem* §276, and notes.

Each class, as it succeeds the other, respectively may hold the homestead "subject to such regulations, as shall be prescribed by law." As each class steps into the shoes of its predecessor, it has the right to assert the homestead subject to said regulations; but if the property has been obtained from, or through the preceding class, or classes, the homestead will be subject to such liens and equities, as surrounded it in the hands of such preceding class, or classes. It is true, that there is nothing in the Constitution forbidding the Legislature from enlarging the homestead, and equally true, that the Legislature cannot reduce, what the Constitution provides. The Constitution provides for a homestead, "*subject to such regulations as shall be prescribed by law;*" but it does not follow that the legislative enactment, to be constitutional should retroact to the date of the adoption of the Constitution, under the *proviso*, "that such homestead exemption shall in nowise affect debts or liabilities existing at the time of the adoption of this Constitution."

By *Gunn* v. *Barry*, 15 Wall. 610, which reiterates a long established principle, it is plain, that even our Constitution could not have exempted debts prior to its

adoption; but it cannot be inferred, that the Legislature is inhibited from establishing a time, when the exemption shall take effect subsequent to the the adoption of the Constitution. In all matters of legislation the Legislature is unlimited except by the restraints of the national and State Constitutions. To prevent gross frauds upon creditors and purchasers, the Legislature under our constitutional provision, had but one duty to perform, and that was to declare the rules and regulations, under which the homestead exemption might be held. It did so in the *act* now brought in review, which took effect December 20, 1873, acts 1872-3, chapter 193.

1879
Special Term.

Speidel & Co.
v.
Schlosser *et al.*

The requirements of section 9 I thus epitomize: 1st. Any husband or parent desiring the benefit of such homestead shall make a declaration of such intention, and therein describe with convenient certainty such homestead, so as to distinguish it from other property. 2d. In case of the death of "such husband or parent" before making and recording such declaration of intention, then the declaration to be made "by the widow, guardian of the infant children, or some person appointed by the circuit or county court of the county for that purpose. The declaration is to be. First, acknowledged before some officer authorized to take acknowledgments of deeds for record. Second, the party shall have 'said declaration duly recorded in a book kept for the purpose in the clerk's office of the county court of the county, in which the homestead is situated. Section 10 deprives any person, after March 1, 1874; who has not made and had recorded such declaration of intention from the benefit of such homestead as to debts contracted before the recording of such declaration.

Were it necessary to cite authority for precedent as to the constitutionality of such statutory requirement of a declaration of intention to hold a homestead, the statutes of California as construed in *Cohen* v. *Davis et al.*, 20 Cal. 187 (second edition), affirmed in *Gluckauf* v. *Bliven*, 23 Cal. 312 and referred to in *Brannan* v. *Wallace*, 25

Cal. 116, and the case of *Noble et al.* v. *Hook et al.* 24 Cal. 638, could be referred to with profit. But it seems to me we need no precedent to guide us in a matter so obvious to the common mind, that the creditor should know the intention of the owner of realty as to his claim of a homestead. The Constitution, in providing that the homestead exemption "shall in nowise affect debts or liabilities existing at the time of the adoption of this Constitution," only did that, which the Supreme Court in *Gunn* v. *Barry*, held to be the true principle. Had the Constitution retroacted, so as to have affected debts and liabilities existing at the time of the adoption of the Constitution, it is clear, that under the principles of *Gunn* v. *Barry*, it would have been unconstitutional, and void, because the exemption would have impaired the obligation of a contract by having impaired the remedy. It was not necessary for the State Constitution to contain such a proviso in restraint of the legislative power, because the Federal Constitution already restrained it by section 10 of article 1, which declares, that "no State shall pass any law impairing the *obligation* of contracts." As the remedy is a part of the obligation of the contract, no law could be passed impairing the remedy. See Justice *Swayne's* opinion in *Gunn* v. *Barry*, 15 Wallace 620. That provision of the State Constitution was only the declaration of an established principle, an inhibition to the passage of an act retrospective as to debts and liabilities, existing at the time of the adoption of the Constitution.

The Legislature had full power, before the adoption of the constitutional provision, to create and regulate homestead exemptions; but it never had power to impair the obligation of an existing contract. As said by the Supreme Court of the United States, in *Gunn* v. *Barry*, " a State can no more impair an existing contract by a constitutional provision, than by a legislative act; both are within the prohibition of the National Constitution."

Under the provisions of our Constitution the homestead may be held, but subject to such regulations as shall be prescribed by law; but the Legislature has an additional limit put to its power in prescribing homestead regulations, viz: It shall not exempt from sale property, 1st, for taxes due thereon; 2d, for the payment of purchase money due thereon, and, 3d, for debts contracted for the erection of improvements thereon. No other limitation is placed upon the powers of the Legislature as to regulating homesteads.

I am therefore of opinion, that the Legislature had the right to require the making, acknowledging and recording of the declaration of homesteads, as prescribed in section 9; and I am further of opinion, that section 10, in prescribing that after the first day of March, 1874, no person, who has not made and recorded such declaration of intention, shall have the benefit of such homestead as to debts *contracted before the recording of such declaration,* is constitutional; but whether, if recorded before, or on the first day of, March 1874, he could have had the benefit of homestead exemption as to debts contracted before that date, but subsequent to the adoption of the constitution, is a question not presented by this case, and will not be decided in this case.

Therefore, as *Mr. Schlosser's* declaration of intention to hold a homestead was filed in the clerk's office, for recordation, and recorded, August 26, 1874, it is an exemption as to debts contracted after that date; but he cannot have the benefit of the exemption as to debts contracted prior to that date and subsequent to March 1, 1874. The evidence shows, that Joseph Speidel & Co.'s sales of goods to defendant were from April 29, 1874, to July 14, 1874, inclusive; that upon said sales defendant had made some payments; that judgment was obtained November 27, 1874, against defendant for the balance $313.75, with interest from date of judgment, and costs, and that upon said judgment there was a credit for the sum of $58.13 upon the sale of defendant's goods under

1879
Special Term.

Speidel & Co.
v.
Schlosser *et al.*

*fi. fa.* This is all admitted by the defendant's answer to the plaintiffs' bill; and is a full admission of plaintiffs' bill.

No defense is attempted by the answer against the bill of complaint; it merely presents for the consideration of the court the fact, that he had made and recorded his declaration of homestead at a time subsequent to making the contract with the plaintiffs. Therefore, under the principles just announced, he could not have availed anything by the answer; and he has sustained no injury by the court refusing to permit him to file it, and the Appellate Court will not reverse on that ground.

But the court has erred in decreeing immediate sale of defendant's property. It should, as has been directed by the frequent ruling of this court, have decreed a time, within which the defendant should pay the judgment, and upon his failure so to do, then sale to be made.

For that error the decree must be reversed.

The court also erred in confirming the report of commissioner Jordan, because of defects apparent on its face in this, first: it does not show, from what time the six hundred dollars of purchase money should bear interest; second, it does not show, to whom the same should be paid; nor is the same ascertained in the decree. The evidence of Crumbacker states, that two of the notes for the purchase money are in the hands of Daniel List; but it does not distinctly appear, whether they belong to said suit, or not; nor does it appear, when they were placed in the hands of said List; nor for what purpose. If List was the owner of the notes prior to the institution of this suit, he is a necessary party thereto. The court should have recommitted the report to the Commissioner with instructions to report the lien debts upon the property in the bill mentioned, and the amount of each, to whom due, and the time from which each should bear interest, together with their respective priorities.

Therefore, the decree of August 21, 1875, should be reversed at the cost of the appellees; and this cause must

be remanded to the municipal court of Wheeling to be further proceeded with according to the principles laid down in this opinion, and according to the principles and rules governing courts of equity.

Judge Johnson dissented from so much of the opinion and syllabus as relates to constitutional questions involved in the case.

DECREE REVERSED, AND CAUSE REMANDED.