IDA B. HEALY v. THE BISMARCK BANK, a Corporation, and
    Frank Barnes, as Sheriff of Burleigh County, North Dakota.

(153 N. W. 392.)

Homestead laws — widows — children — deceased persons — homestead inter-
    est.

1. The homestead laws of North Dakota were made for the protection of

---

Note.—As to whether the continuance of the family is a condition of the con-
tinuance of the homestead, where its existence is a condition of the inception of the
homestead, see note in 16 L.R.A.(N.S.) 111.

the widows of deceased persons as well as for that of their children, and if such a widow had once had a homestead interest during the lifetime of her husband, such interest will not be devested upon the death of her husband merely because she happens to have no children, or because her children have grown up and no longer need her care and support.

**Homestead — title to property claimed as — name of wife — name of husband.**

2. It is immaterial under the statutes of North Dakota whether the title to the property which is used as a homestead is in the name of the wife or in that of the husband, and property which was held in the name of the wife, but which was occupied as a home, may be claimed by the wife after the death of the husband.

**Homestead laws — liberally construed — family — protection of.**

3. The homestead provisions of the Code are liberally construed as being intended for the protection and preservation of the family as a whole, including the wife.

**Homestead — abandonment — occupied by widow — after death of husband — house rented — room reserved — furniture stored — intention and acts.**

4. A homestead will not be deemed to have been abandoned where a widow has occupied the same exclusively for ten years after the death of her husband, and until her children have married or became able to take care of themselves, and who, since that time and for a period of two years, has rented the house on a month to month lease, and has spent her time visiting with her children, but has nevertheless retained a room in said house in which her furniture has been stored, and which, though crowded, she has herself occupied from time to time between the visits to her children, and has always intended to retain as a homestead.

Opinion filed June 3, 1915.

Appeal from the District Court of Burleigh County, *Nuessle,* J. Action to avoid the lien of a judgment and to enjoin the execution thereof. Judgment for plaintiff. Defendants appeal.

Modified and Affirmed.

*Newton, Dullam & Young,* for appellants.

Respondent never filed any declaration of homestead as to the land involved. She owned the fee title. No family was with her, and she occupied only a room in the house, at intervals, the property being rented out by the month to strangers. The homestead laws are not

for the benefit of individuals, but for the family as a whole. Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684; First International Bank v. Lee, 25 N. D. 203, 141 N. W. 716; 15 Am. & Eng. Enc. Law, 2d ed. 526; Rev. Codes 1905, § 5072, Comp. Laws 1913, § 5628.

Plaintiff does not claim this property as her homestead, as coming to her through the death of her husband. Rev. Codes 1905, § 8087, Comp. Laws 1913, § 8723.

The plaintiff was not the head of a family. Revalk v. Kraemer, 8 Cal. 66, 68 Am. Dec. 304.

The homestead exemption is a privilege, rather than an estate. It is for the family, and is made free from the burden which rests upon other property for this reason. The exemption is given to enable the owner to meet the burden of support of the family. If there is no family, there is no such burden. Herrin v. Brown, 44 Fla. 782, 103 Am. St. Rep. 182, 33 So. 522; Calhoun v. McLendon, 42 Ga. 405; Hall v. Matthews, 68 Ga. 490; Cooper v. Cooper, 24 Ohio St. 488; Revalk v. Kraemer, 8 Cal. 66, 68 Am. Dec. 304; Santa Cruz Bank v. Cooper, 56 Cal. 339; Waples, Homestead & Exemption, pp. 88 et seq; Holcomb v. Holcomb, 18 N. D. 561, 120 N. W. 547, 21 Ann. Cas. 1145; Fullerton v. Sherrill, 114 Iowa, 511, 87 N. W. 419; Stanley v. Snyder, 43 Ark. 429.

The plaintiff, in any event, had abandoned the property as a homestead, if one ever existed. Klemmens v. First Nat. Bank, 22 N. D. 304, 133 N. W. 1044.

*Miller & Zuger,* for respondent.

The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws exempting from forged sale to heads of families, a homestead. Const. § 208; Rev. Codes 1905, § 5049, Comp. Laws 1913, § 5605.

The homestead right extends to the surviving husband or wife. Rev. Codes 1905, § 8087, Comp. Laws 1913, § 8723.

The intent of the law is to continue the exemption for the benefit of the surviving family after the death of the owner. The right is also extended to the wife or minor children. Calmer v. Calmer, 15 N. D. 120, 106 N. W. 684; Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684.

The right is not personal to anyone; it is a family right. First International Bank v. Lee, 25 N. D. 197, 141 N. W. 716.

The existence of a family is necessary to the inception of a homestead right, but not to the continuance thereof. Once the right exists, it continues until devested in the manner provided by statute, which in this state can be only by death, voluntarily alienation, or abandonment. Palmer v. Sawyer, 74 Neb. 108, 103 N. W. 1089, 12 Ann. Cas. 715; Dorrington v. Myers, 11 Neb. 388, 9 N. W. 556; Galligher v. Smiley, 28 Neb. 189, 26 Am. St. Rep. 319, 44 N. W. 187; Stults v. Sale, 92 Ky. 5, 13 L.R.A. 743, 36 Am. St. Rep. 575, 17 S. W. 148.

The original owner has the same right as the survivor. The same right exists as to his own property as is given to him in his wife's property after her death. Blum v. Gaines, 57 Tex. 119.

The law does not withdraw from the widow her right, and the shield that protected her in the lifetime of her husband, upon his death. Holmes v. Holmes, 27 Okla. 140, 30 L.R.A.(N.S.) 920, 111 Pac. 220, overruling Betts v. Mills, 8 Okla. 351, 58 Pac. 957.

Any other construction would render the survivor who has been deprived of the family by accident or disease, or for some other reason over which he had no control, liable to be instantly turned out of his homestead by his creditors. Beckmann v. Meyer, 75 Mo. 333.

After a homestead estate has once been acquired under the statute, it continues in the original owner so long as he occupies it as his homestead, although he may have ceased to be a housekeeper for a family, and will be extinguished only in some one of the ways mentioned in the statute. Weaver v. First Nat. Bank, 76 Kan. 540, 16 L.R.A.(N.S.) 110, 123 Am. St. Rep. 155, 94 Pac. 273; Ellinger v. Thomas, 64 Kan. 180, 67 Pac. 529.

Where a woman who rents her homestead, but reserves and retains one room in which she stores her furniture, and occupies the same at her convenience, there is no abandonment. Cross v. Benson, 68 Kan. 495, 64 L.R.A. 560, 75 Pac. 558; Rosenberger v. Hawker, 127 Iowa, 521, 103 N. W. 781.

BRUCE, J. The only question in this case is whether the plaintiff, Ida B. Healy, had, at the time of the levy of the execution, a homestead interest in a certain house and lot in the city of Bismarck.

The only testimony upon the question is given by herself, and is as follows: I am the widow of Anderson Healy and the plaintiff in this action. We were married in 1882, in Nova Scotia. I came to Bismarck in 1883, where we first resided in a rented house on Ninth street. In 1896 we became the owners of lot 8, block 55, Northern Pacific Addition to the city of Bismarck, title to which was taken in my name. At that time we, or either of us, did not own any other property in the city of Bismarck or state of North Dakota. The purpose of purchasing said premises was to have a home. There were no buildings on the premises at the time we purchased the same. In 1896 and the spring of 1897 we built a dwelling house on said premises and moved into it about March, 1897. At that time neither my husband nor I owned any other real property. We occupied the premises generally and continuously from 1897 to 1901, until the death of my husband, the 27th day of June, 1901. He died at our home, described in the complaint. We had two children. I have never married again. Since the death of my husband I have lived at and in the property described in the complaint. No one other than my children have lived with me in said premises since the death of my husband, except in the two years last past, during which time Mr. Staley has lived there. Before that I lived there right along. Mr. Staley has lived in the house the last two years. There was no lease—just rented it from month to month. He has not rented any other premises. I have one large room that I withheld for myself. My furniture is in the room I spoke of,— my home. I have never sold the premises.

Q. Now, where have you been or resided during the last two years, or such part of the time as you have been away from Bismarck?

A. I visited with my mother for three or four months in Nova Scotia, and since that time I have been nearly all of the time with my daughter, Mrs. Rittgers, at Jamestown, going back and forth to Bismarck. There was about six months after I came back from Nova Scotia that I was right here in Bismarck, and was in my room most of the time.

Q. Has your residence with your daughter at Jamestown been in the shape of visits or otherwise?

A. I was visiting most of the time. It was not my intention at any time to abandon my home in Bismarck. I have not at any time

since the death of my husband had any other home than this home at Bismarck. I have not at this time any other home. My son, Ernest Healy, is not married. He is twenty-nine in August. I do not know for what indebtedness the notes were given by myself and my husband. As I remember it, it was for stock at the store, the little grocery store. I couldn't say, though, just what it was. I have really forgotten. We had a small store.

Q. Do you know whether it was for the purchase price of the lots or not?

A. I do not know whether it was or not.

Q. Mrs. Healy, don't you know what these notes were given for?

A. No, I can't say. I don't know what they were given for.

Q. Do you know the date of the notes?

A. I don't. I occupied the house on lot 8 until about two years ago. I did some private boarding there. I stored my furniture in the northwest room usptairs. The room is about 8 or 10 by 11 or 12. I have dressers, rugs, chairs, tables, beds, just about what I had in my house. Nearly all, excepting a few pieces that I sold out of my parlor. I would think there were probably three beds. I would not be just sure. None of them are set up at the present time. I have a dining room table, and then I have a kitchen table, and about three small tables, just little tea stands that I had in the bedrooms for the boarders. There are three dressers. I would not know how many chairs, because I had some kitchen chairs and some dining room chairs. Perhaps all together there would be eleven or twelve. I had no reason for counting them. I just kept getting them as I had to, and couldn't say for certain. Some rocking chairs, I couldn't say just how many. Just a few common dishes, perhaps half a dozen ordinary books. I have three rugs there. No carpets. I have one of those little gasolene stoves in my room. The room is pretty well occupied with the furniture that is stored there. Pretty well filled up. None of the furniture is packed up ready for shipment and never has been. None is crated. I have some bedding just thrown loosely on some chairs. I have cooking utensils in the room. I have all the little things to put on the stove and so on. In fact, I have most everything of my cooking utensils in that room that I had in my kitchen, because I took them out of Mrs. Staley's way. They are the things I used while I was keeping the premises. I

have been away quite a good part of the time since I rented the house to Mrs. Staley. Most of the time, aside from the time I spent in Nova Scotia, has been spent at Jamestown. There was about six months after I returned from Nova Scotia that I was here in Bismarck.

Q. Where did you reside while you were in Bismarck?

A. Ernest had a couple of rooms. He was working for H. L. Reade, of the Union Mercantile Company. He was working for the Union Mercantile Company while I was here. His rooms were in the little building near the Union Mercantile,—I think about five or six blocks south of the premises I formerly lived in.

Q. And you stayed in those rooms during those six months that you were in Bismarck?

A. No, about three months. Then I went to Jamestown with my daughter, Mrs. Harry Rittgers. Mrs. Rittgers has been married about two years. She lived with me until she was married two years ago, and helped me keeping the boarders, a very little, as she was always in school. She was married before. She was first married in the year 1906, and then she married the second time in 1911. She made her home with me until she was first married in 1906.

Q. Now, isn't it a fact, Mrs. Healy, that you have, since you have been in Jamestown, spent some of your time keeping house with Ernest?

A. I have in rooms that were furnished—Mr. and Mrs. Rittgers's rooms—while they were at Grand Forks. Ernest and I kept house. I cooked his meals for him in their rooms. Ernest has been employed at Jamestown for sometime. He is not married. He is twenty-nine years old. I was in Bismarck probably a little more than three months during the last two years. I was in Nova Scotia about between three and four months, beginning two years ago this last June. I then returned to Bismarck. I was here a little more than three months. That was the time I occupied the rooms that Ernest had. I went to Jamestown shortly after that when I got my arrangements made. I have been there since, off and on. I am here in Bismarck about every two months. When I am here I stay sometimes three to four days and have been here a week. I come down here to visit friends and to look after my home and so on,—collect my rents here and look after repairs. I

sometimes stay with friends when I come to town, and sometimes I stay right in my room at Mr. Staley's,—at my home.

Q. At those times you have stayed in a room furnished by Mr. Staley?

A. Not always. I stayed in my room most of the time until last winter, when it was not heated, and I stayed there and slept in a room downstairs because they did not want me to go up there in the cold. I have not a couch nor a cot in my room. I have not at any time during the past two years had a cot or a couch in there. I had a small bed. Mr. Staley pays $30 a month. When I went to Jamestown and kept house for Ernest I did not take any of my furniture with me. I did not take any bedding or articles of furniture. I did not purchase the lots from the Bank of Bismarck. I did not borrow any money from the Bismarck Bank for which these notes were given. It was not a debt of mine. I know that the lots were paid for at the time I built the house. Mr. Rhud built the house and he furnished the lumber. Grambs Brothers furnished the plumbing. None of the material in connection with the building was furnished by the Bismarck Bank and none of the labor. It is certainly my intention to continue to reside in Bismarck and on these premises.

Q. You say, Mrs. Healy, that you once in a while have stayed in this room in this house?

A. Yes.

Q. These different times since have been since this suit was started, haven't they, Mrs. Healy, last spring?

A. No, I would not think so because that would be during last winter.

Q. How often have you stayed there?

A. When I came back from Nova Scotia I was there, and then two different times since. One of these times is not my present trip here. I am not staying there now because I do not think it would be very comfortable or convenient for my daughter. I am with a friend. I can get the different dates as to the other two times if it is necessary. I will look it up. In 1907, when I conveyed lot 7 to Ernest, he was working at the Union Mercantile Company, paying his way. At that time my daughter was married and lived with her husband. It has never at any time been my intention to abandon my home in Bismarck and make my home at any other place.

The homestead rights in North Dakota differ in many respects from those in other states. The principal statutes upon the subject are as follows: Section 5605, Compiled Laws of 1913: "The homestead of every head of a family residing in this state, not exceeding in value $5,000, and if within a town plat, not exceeding 2 acres in extent, and if not within a town plat, not exceeding in the aggregate more than 160 acres, and consisting of a dwelling house in which the homestead claimant resides and all its appurtenances and the land on which the same is situated shall be exempt from judgment lien and from execution or forced sale except as provided in this chapter." Section 5606, Compiled Laws of 1913: "If the homestead claimant is married the homestead may be selected from the separate property of the husband, or with the consent of the wife, from her separate property. When the homestead claimant is not married, but is the head of a family, within the meaning of § 5626, the homestead may be selected from any of his or her property; provided, that the homestead so selected must in no case embrace different lots or tracts of land unless they are contiguous." Section 5626, Comp. Laws 1913, provides: "The phrase 'head of a family' as used in this chapter includes within its meaning: 1. The husband or wife when the claimant is a married person; but in no case are both husband and wife entitled each to a homestead under the provisions of this chapter. 2. Every person who has residing on the premises with him or her and under his or her care and maintenance, either: (a) His or her child or the child of his or her deceased wife or husband, whether by birth or adoption. (b) A minor brother or sister or the minor child of a deceased brother or sister. (c) A father, mother, grandfather or grandmother. (d) The father or mother, grandfather or grandmother of a deceased husband or wife. (e) An unmarried sister or any other of the relatives mentioned in this section who have attained the age of majority and are unable to take care of or support themselves." Section 5627, Comp. Laws 1913, provides: "Upon the death of a person in whom the title to real property constituting a homestead as defined in this chapter is vested a homestead estate in such real property shall survive, descend and be distributed to the persons and in the order following: 1. To the surviving husband or wife for life; or, 2. There being no surviving husband or wife, to the decedent's minor child or children until the youngest attains majority; or, 3. The sur-

viving husband or wife dying before, then thereafter to the decedent's minor child or children until the youngest attains majority."

Section 8723, Compiled Laws of 1913, provides: "Upon the death of either husband or wife the survivor, so long as he or she do not again marry, may continue to possess and occupy the whole homestead, and upon the death of both husband and wife the children may continue to possess and occupy the same until otherwise disposed of according to law. Such homestead, as defined in § 5605 of the Civil Code, must be ascertained and set apart as hereinafter prescribed upon the selection of the person or persons entitled to possession thereof, and shall not be subject to the payment of any debt or liability contracted by or existing against the husband or wife or either of them previous to or at the time of the death of such husband or wife."

It seems quite clear from these statutes that the homestead laws were made for the protection of the widow whether she has children to support or not, and that if the property was once a homestead, such widow will not lose her interest therein merely because her children have grown up, or she does not happen to have any. It also seems to be immaterial whether the fee to the homestead during the lifetime of the husband and wife was in the husband or in the wife. In construing these identical statutes, the supreme court of South Dakota in the case of Wells v. Sweeney, 16 S. D. 489, 102 Am. St. Rep. 713, 94 N. W. 394, said: "So far as the rights of the surviving husband, wife, or minor children to occupy the property as a homestead are concerned, it is not material in which party the legal title is vested, and hence, if there are heirs of the party holding the legal title, they will not be entitled to a partition of the property during the lifetime of the surviving husband or wife or minor children who actually possess and occupy the premises as a homestead."

In the case of Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684, we held that the homestead provisions of this state should be liberally construed, and that the exemption which is declared in favor of the head of the family is in a representative capacity, and is intended not for the benefit of the individual, but for the protection and the preservation of the home, and for the benefit of the family as a whole, and that such exemption is not presumed to be waived by a failure to expressly claim it. In the case of Calmer v. Calmer, 15 N. D. 120, 106 N. W. 684, we

said: "The intent of the law to continue the exemption for the benefit of the surviving family after the death of the owner of the homestead is too clear for question. . . . The exemption right is not only continued after the death of the family head, but is enlarged so as to possess all the attributes of an estate in the property *for the benefit of the widow* or minor children, superior not only to the rights of the creditors, but also to the rights of the legal heirs or devisees. The legislature, it is true, has not provided any specific method of procedure by which to adjust the respective rights of the widow and the creditors of a decedent's estate in case such adjustment becomes necessary. Where the right is clear, however, it will not fail for want of a remedy." In the case of First International Bank v. Lee, 25 N. D. 197, 141 N. W. 716, we said: "The law does not look upon the right to exemptions as a personal right of the husband, or even as being given to the husband at all. It is a family right, rather than a personal right."

There can be no question that the property in controversy was the homestead of Mr. and Mrs. Healy during the life of the husband, and it is immaterial whether the title was in her name or not. The statute expressly provides that such homestead can be selected from the separate estate of the wife. Section 5606. The evidence, too, seems to show that though the title to the property was taken in the name of the wife, it was paid for out of the savings of both parties. The house at any rate was the only home of the husband and wife, and has been the plaintiff's only home since the death of her husband. It was their homestead at the time the debt to the bank was incurred. After the death of her husband, in 1901, the wife occupied and lived in the house with her children for at least ten years, and did not even rent a portion of it until within two years of the time of the trial, and then only upon a month to month lease which reserved to her a room for her own use. During a portion of these ten years, she kept boarders in the house and supported her daughter while the latter was going to school. Section 8723, Compiled Laws of 1913, which provides that upon the death of either husband or wife, the survivor, so long as not again married, may continue to possess and occupy the whole homestead, and upon the death of both husband and wife, the children may continue to possess and occupy the same "until otherwise disposed of according to law," makes it clear that it was the intention of the law that the protection should be fur-

nished to the wife and widow as well as to the children of a married man.

There can be no doubt that if the title had been in the husband the interests of the wife would have been protected. "Why," says the supreme court of Kentucky, "should not the original owner have a right equal to the survivor, and why should not the law favor the latter equally at least with the former? Is the party to be worsted because he owns the property? Can any reason be given why the same right should not exist as to his own property as is given to him in his wife's property after her death?" Stults v. Sale, 92 Ky. 5, 13 L.R.A. 743, 36 Am. St. Rep. 575, 17 S. W. 148. If this is true where the title is in the husband, how much more should it be true where the title is in the wife. It could never have been the policy of the legislature and of the law that the homestead of the wife shall be protected during the life of her husband and that when he dies that protection shall be taken away. "It would turn into mockery the constitutional provision prepared against the days of her adversity, to say that her husband's creditors may enter as soon as the hearse has left the door." Cross v. Benson, 68 Kan. 495, 64 L.R.A. 560, 75 Pac. 558. "The beneficent purpose of both statutes," says the supreme court of Oklahoma, "is to preserve and protect the home in the possession and enjoyment of not only the head of the family but all the members thereof. . . . It seems to us that it would be a construction strained and foreign to the spirit of the statute, to hold that it was intended, so long as the husband, who may by labor support his wife, to protect the wife against the misfortune of being deprived of her home to satisfy the debts of the husband, who has perhaps suffered a business failure or financial loss; but when the hour of death comes, with its sorrow and the expenses that sickness and death entail upon the family, the law will then withdraw from her the shield that protected her in her home while her husband lived, and let the accumulated misfortunes or improvidences of the husband that the law has withheld until the dark hour of his death be then visited upon her. This would indeed be converting that which was intended for a shield into a sword." Holmes v. Holmes, 27 Okla. 140, 30 L.R.A.(N.S.) 920, 111 Pac. 220, overruling Betts v. Mills, 8 Okla. 351, 58 Pac. 957.

Nor do we believe that the fact that the children of the plaintiff have now grown up, and perhaps no longer need her support and no longer

need the home, in any way, alters the case. The homestead was for the protection of the family, and not only does § 8723, Compiled Laws of 1913, provide for the possession of homesteads by widows and widowers, but it is plain that it was the intention of the law that the wife should be looked upon as a constitutent part of the family.

We hold, in short, with the supreme court of Kansas, that after the homestead estate has once been acquired under the statute, it continues in the original owner so long as he occupies the homestead premises, although he may have ceased to be a housekeeper for a family, and will only become extinct in some of the modes mentioned in the statute, of which ceasing to be a housekeeper for a family is not one. Weaver v. First Nat. Bank, 76 Kan. 540, 16 L.R.A.(N.S.) 110, 123 Am. St. Rep. 155, 94 Pac. 273; Ellinger v. Thomas, 64 Kan. 180, 67 Pac. 529; Beckmann v. Meyer, 75 Mo. 333.

We think, too, there is no merit in respondent's contention that the homestead has been abandoned. The plaintiff never at any time relinquished the control of the house. She merely rented it month by month. She reserved a room in the house, even though it was occupied as a whole by tenants. She was simply doing what nine out of ten widows whose children have grown up would do, that is, reserving the central homestead and the right to return thereto as a shelter against adversity and as a permanent home, but, relieving the monotony and loneliness of life by visiting her children and friends as occasion offered. Such acts do not constitute an abandonment of a homestead. See Rosenberger v. Hawker, 127 Iowa, 521, 103 N. W. 781.

Although the judgment of the district court should, in all material essentials, be affirmed, the injunction which was issued should be modified so that, instead of being perpetual, it should be limited to the time during which the premises continue to be a homestead.

With the modification suggested the judgment of the District Court is affirmed. The costs and expenses of this appeal, however, will be borne by the appellant.