Plaintiffs, B.C. and I.B. Grotberg, husband and wife, brought this action to set aside certain mortgages executed by the husband alone to the defendant, covering premises which, it is claimed, constituted the family homestead. It appears not to be disputed that the plaintiffs, with their children, occupied the premises covered by the mortgages as a homestead continuously up to August, 1919.
The case was tried to the court and resulted in findings and judgment for the plaintiff, Inga B. Grotberg. The court found that the plaintiffs were husband and wife; that they have, at all the times referred to in the complaint, had minor children dependent on them for support. That in the year 1890, the husband made an entry, under the homestead laws of the United States, upon the premises described in the mortgages and thereafter received a patent therefor from the United States; that he was, at the time of the execution of the mortgages, the fee owner of the land; that, at the time of the commencement of this action, the husband had lost title to all the land described in the mortgages, except the family homestead situated in section 4, *Page 551 
township 141, range 57, consisting of 160 acres; that on November 26, 1920, the husband alone executed to the defendant a mortgage securing the sum of $4,000 covering the property referred to as the homestead and that such mortgage was filed on November 30, 1920, and duly recorded; and that the consideration expressed in this instrument does not represent the purchase price, or any part thereof. It is this instrument with which we are concerned on this appeal. Several other mortgages were executed, covering the property claimed as a homestead and other lands; but we need not give them any further notice.
The court found that ever since the marriage of the plaintiffs, in 1910, until August, 1919, they occupied and claimed the premises in section 4 as their homestead; that prior to August, 1919, the wife became ill, necessitating treatment in a Fargo hospital for ten days; that in the spring of 1919, the plaintiff husband leased the homestead premises and other land to his two sons for a period of three years, retaining the right to occupy and use a portion of the house and out-buildings, and that by reason of his wife's illness, he removed from the family home and rented a house in Valley City; that plaintiffs removed some of their furniture but left some beds, bedding, cook-stove and kitchen equipment in the farm home; that they left livestock and machinery on the premises which has remained there continuously. The court found that the health of the wife grew steadily worse, both mentally and physically, and that, on September 11, 1920, she was committed to the State Hospital for the Insane, at Jamestown, from which institution she was paroled on February 1, 1921, and finally discharged on February 1, 1922; that the plaintiffs returned to their country home in September, 1921, and have resided and actually occupied the premises as a home ever since; that during the absence of the plaintiffs from the farm, some of the minor children continued to occupy the farm home all the time and other of the minor children occupied the home during a part of the year, remaining with their parents to attend school at Valley City the remainder of the year; that during the temporary absence of the plaintiffs from the farm, the husband exercised supervision of the farming operations conducted by his sons; and spent "considerable time" on the farm during the summer and cropping seasons of each year and at times remained there over *Page 552 
night; that he retained his voting residence in the township in which his homestead was situated; that he and his wife always intended to return at the expiration of the three year lease and did, in fact, return in the month of August or September, 1921, before the expiration of the lease.
The court found that the wife at no time abandoned the farm home as a homestead or lost her homestead rights therein; that she was temporarily absent from her farm home by reason of illness and insanity, and not otherwise; that both plaintiffs and their children actually occupied the premises as a homestead long before and at the time of the commencement of the action and were occupying the same at the trial thereof; that the mortgages were all executed by the husband alone for the sole purpose of securing past due indebtedness and upon the solicitation of the defendant; and that the wife had no actual knowledge of the execution of the instruments until on or about March 11, 1925, when notice of intention to foreclose the mortgage for $4,000 was served on her.
The defendant asks a trial de novo. The assignments of errors are grouped by the appellant under four propositions as follows: First, were the premises the homestead of the plaintiffs at the time of the execution of the mortgage for $4,000. Second: If the premises were the homestead of the parties, has the statute of limitations, § 5610, Comp. Laws 1913, barred the plaintiff's right to assert the homestead character. Third: Is the plaintiff husband estopped from asserting his homestead right and from contesting the validity of the mortgage. Fourth: Is the wife, as the owner in fee of the premises, the same having been conveyed to her by her husband in fee in 1924, the head of a family and in a position to assert the homestead right or defeat the mortgage.
The ultimate fact around which the main controversy centers is whether the premises had lost their homestead character by reason of abandonment at the time of or prior to the execution of the mortgage for $4,000. The defendant contends that the parties had abandoned the homestead and that, consequently, the husband alone could execute a valid conveyance thereof. The defendant then argues, if this proposition be resolved against it and the conclusion be reached in this court that the findings of the trial court have substantial support in the evidence; *Page 553 
that § 5610, Comp. Laws 1913, must be construed to be a bar to this action.
Tracy, who acted for the bank in all the transactions leading up to the execution of the mortgage, knew that the premises were impressed with a homestead character and understood that unless actual abandonment had taken place, the husband alone could not execute a mortgage which would become a valid and enforceable lien against the property. He says he knew that Mrs. Grotberg was insane when he procured the execution of the instrument. It appears, indeed, that he so advised the husband in one of their numerous conversations relating to the indebtedness. According to Tracy's testimony, these conversations started as early as the date on which the wife was taken to the hospital in Jamestown, in September, 1920, and continued, at intervals, until the execution of the mortgage on November 26, 1920. He knew that the sons were operating the farm under an agreement with the father; and he knew also that the husband and wife were living in a rented house in Valley City. He was so doubtful of the validity of a mortgage executed by the husband alone that he consulted counsel and thereafter, presumably upon the advice of counsel, inserted a clause therein to the effect that the premises were not occupied by the mortgagor as a homestead. In other words, the defendant bank took the mortgage as additional security for a pre-existing indebtedness with full knowledge of facts and circumstances of a nature so equivocal that the agent of the defendant did not believe or had grave doubts that the premises had been divested of their homestead character. Plaintiff's husband testifies that he told Tracy that they expected to return to the farm; but whether he told him this prior or subsequent to the execution of the mortgage, does not clearly appear.
It is not disputed that the premises were the homestead of the parties until August, 1919; and that the plaintiffs have minor children dependent upon them for support. It appears, further, without dispute, that the defendant bank, through its cashier Tracy, and the husband have had business transactions extending over many years; that Tracy had personal knowledge and supervision of these transactions and was familiar with the fact that the premises in dispute were at one time impressed with a homestead character. It appears that the husband has been largely indebted to the defendant bank since 1910. *Page 554 
It would extend this opinion beyond reasonable bounds to detail the testimony of the witnesses bearing upon the question of abandonment. On this point the court found against the defendant and after careful consideration of the record we are convinced that the findings have substantial support in the evidence. It appears from the testimony of the plaintiffs that they left the farm mainly, if not entirely, because the health of the wife had broken down; she suffered from asthma and nervous disorders, which gradually grew worse, until her mind became unbalanced and she was confined in the hospital for the insane on September 11, 1920. They did not purchase a home or establish a homestead in Valley City; they rented a house, and did not establish even a voting residence in that city. Apparently during all the time they were away from the farm and while it was operated by two sons under a lease, the terms of which are not in the record, some of their children remained on the farm, and some attended school. The parties left farm machinery, furniture and kitchen equipment on the farm; the husband divided his time between the farm and his Valley City home. Both plaintiffs testify that it was expressly understood between them at the time the homestead was leased to the boys that they would return at the expiration of the lease if the wife was able to work or recovered her health. They moved away in August, 1919; she was committed September 11, 1920; the mortgage was executed November 26, 1920; she was paroled from the hospital February 1, 1921; husband and wife returned to the farm in August, 1921; and she was officially discharged February 1, 1922. After her return she was in poor health, very feeble, emaciated and nervous, but apparently improved. They have lived on the farm since August, 1921. The wife testified that her health was so bad that she couldn't lie down in bed; that she sometimes was forced to crawl on hands and knees to do her work in the house. The only child who came with her to Valley City was "the little girl. Lydia and Gertrude never came to Valley City to live; they visited with me; they remained all on the farm with the boys." She had no knowledge of the mortgage in suit until notice of foreclosure was served sometime in 1925. One of the boys testified "they said that on account of Mrs. Grotberg's health that they would much rather go away from the farm for a while to give her a chance to recuperate and they wanted us to rent the farm and we run it . . . *Page 555 it was said they would return at the end of those three years."
It is apparent that the plaintiffs, through some understanding with the sons who rented the farm, reserved the right to keep some property on the premises, including live-stock, and furniture and kitchen equipment in the house; that some members of the family remained on the farm all the time, but under what arrangements the record does not disclose. We are of the opinion that it sufficiently appears from the testimony that the plaintiffs left the farm because of the ill health of the wife; and that they intended to return at the end of three years, or earlier, if her health improved. In other words, the absence from the homestead was temporary and with the intention of resuming the occupancy as soon as the wife's health permitted.
Temporary absence and removal therefrom does not defeat the right to the homestead. Edmonson v. White, 8 N.D. 74, 76 N.W. 986; Blumer v. Albright, 64 Neb. 249, 89 N.W. 809; Healy v. Bismarck Bank, 30 N.D. 628, 153 N.W. 392. The right of homestead exemption may be lost by voluntary abandonment. The abandonment, however, which will suffice to effect a forfeiture of the right must be voluntary; and it must be permanent; that is, without an intention to return and re-occupy the premises as a home. This is a question of fact. Potts v. Davenport, 79 Ill. 459; Brennan v. Wallace, 25 Cal. 108; Fyffe v. Beers, 18 Iowa, 7, 85 Am. Dec. 577; 29 C.J. 965; and see Schaf v. Corey, 50 N.D. 436, 196 N.W. 502.
We think the rule is well established and is consonant with justice and the spirit and purpose of the exemption laws that the mere fact of removal from the premises and residence in Valley City, or elsewhere, because of poor health, did not, in this case, amount to an abandonment of the homestead. The testimony amply supports the findings of the trial court that the departure from the farm was due to the poor health of the wife; that there existed simultaneously an express and unequivocal intention on the part of both husband and wife to return to the farm, if and when the wife recovered. Declarations of the claimant, at the time of his removal from the homestead, may be considered by the court in ascertaining the real intention which actuated the parties; but they, of course, are not conclusive. McMillan v. Warner, 38 Tex. 410; Jarvais v. Moe, 38 Wis. 448; 29 C.J. 962, 963.
The right of temporary absence without loss of the homestead *Page 556 
exemption is generally recognized; but it would be practically valueless if coupled with a condition that the premises must be left vacant. Hence, it has been held that leasing the home place to a tenant is not alone conclusive evidence of an intention to abandon the homestead. Herrick v. Graves, 16 Wis. 157; Dunn v. Tozer, 10 Cal. 171; Austin v. Stanley, 46 N.H. 51; Wetz v. Beard,12 Ohio St. 431; Myers v. Ford, 22 Wis. 139; Wiggins v. Chance,54 Ill. 175.
We do not deem it necessary to extend the opinion by a lengthy discussion of legal principles. See Yellow-Hair v. Pratt, 41 S.D. 190, 169 N.W. 515; Schaffner v. Campbell, 198 Iowa, 43, 199 N.W. 334; 29 C.J. 939-941. In 29 C.J. supra, it is said: "An abandonment is not occasioned by a removal or temporary absence caused by some casualty or necessity if there is an intention of returning as soon as circumstances will permit." And if the removal be for the "purpose of obtaining better educational facilities for his children, his absence is not regarded as an abandonment, if the removal is not intended to be permanent, even though later he sells the homestead and never returns." 29 C.J. 939-941. In Healy v. Bismarck Bank, supra, the facts are in many respects, analogous, though not identical. The record supports the finding that the premises were never abandoned as a homestead.
The conveyance in question was executed while the wife was an inmate in the state hospital for the insane. Tracy, the agent of the defendant in all the transactions, knew that the wife was insane. Sections 5633-5637 prescribe in detail the procedure to be followed when it is desired to convey or encumber the homestead property when one spouse is insane. A petition must be presented to the county court, with notice served as directed by that court, whereupon it may authorize a transfer of the homestead and may direct the disposition of the proceeds of the sale. Section 5639 provides that when the procedure outlined in the preceding sections is followed the conveyance shall be as valid and effectual as if the insane spouse had joined in the execution and acknowledgment of the transfer. Section 5608, Comp. Laws 1913, provides that the homestead cannot be encumbered unless the instrument is executed and acknowledged by both husband and wife. When either spouse becomes insane, there is complete incapacity to execute a conveyance; in such event, however, the legislature has prescribed *Page 557 
the procedure which must be followed in order to effect a valid transfer of the homestead. In the case at bar, there was neither a joint conveyance, nor a conveyance in conformity with the provisions of the code governing the transfer of a homestead in case of insanity of one party to the marriage. The transfer, therefore, was clearly without effect as far as any rights of Mrs. Grotberg in the premises were concerned. There had not been an abandonment of the homestead at the time the wife was committed to the asylum, or when the transfer in question was made. The premises have at all times been impressed with the homestead character. The attempted transfer was wholly ineffectual as an encumbrance. The wife upon recovering her sanity, could attack it and have it removed as a cloud upon her homestead estate. Section 5610, Comp. Laws 1913, has no application to conveyances or encumbrances of the homestead executed by one spouse while the other is insane. The restrictive provisions of § 5608, supra, apply with full and, perhaps, peculiar force when one party to the marriage is mentally incompetent. 29 C.J. 893. In Whitlock v. Gosson, 35 Neb. 829, 53 N.W. 980, the husband attempted to encumber the homestead during the insanity of the wife and the court held the transaction void. To the same effect see Security Loan T. Co. v. Kauffman,108 Cal. 214, 41 P. 467; Locke v. Redmond, 59 Kan. 773, 52 P. 97. In Way v. Scott, 118 Iowa, 197, 91 N.W. 1034, it was held that although the father abandoned the homestead, the abandonment was without effect as far as the children were concerned for the reason that the wife at the time of such abandonment was confined in an asylum for the insane and the children were entitled to the occupancy and possession as long as the right of homestead existed in either parent. See also Alton Mercantile Co. v. Spindel, 42 Okla. 210, 140 P. 1168.
It would indeed be a startling doctrine if the husband could, while his wife was confined in an institution for the insane, pursuant to an adjudication of mental unsoundness, mortgage the homestead, actual possession of which had been temporarily surrendered in order to seek a cure for the wife's affliction, and set in motion the statute of limitations, § 5610, Comp. Laws 1913, with the result that when she returned it was only to find that through the conduct of her husband and the avidious activity of his creditors, both aided by the lapse of time, *Page 558 
she had lost her home. This is not a case where the mortgage is void merely because of the nonjoinder of the wife, as in Sexton v. Sutherland, 42 N.D. 509, 174 N.W. 214, or the cases therein cited; but because of the failure to convey in accordance with the statutes governing the transfer of the property of insane persons. The beneficent protection of the homestead laws is not withdrawn from the wife when she loses her reason; on the contrary, the legislature has entrusted the property interests of the unfortunate victim of insanity to the discreet and disinterested care of the county court. The legislature of this state has raised an effective barrier for the protection of the insane alike against the improvidence of the spouse who is competent and the rapacity of energetic creditors.
In the case at bar Mrs. Grotberg acted promptly. She proceeded immediately, upon discovering the existence of the mortgage, to have it removed as a cloud on her homestead interest. No statutory bar stands in the way.
Whatever effect the recital in the mortgage may have on the right of the maker to assert the homestead character of the premises, it could have none on the interest of Mrs. Grotberg. 13 R.C.L. 663; 29 C.J. 960. She has done nothing to estop her from asserting her rights. Nor is it material that the husband conveyed the land to his wife in 1924. The rights of the defendant, as a lien claimant under the mortgage, and of the plaintiff as one asserting the invalidity of that instrument, must be measured by the conditions existing at the time of its execution. 29 C.J. 943. If at the time the husband signed the conveyance, the premises were the homestead of the parties, and the wife was insane, the transfer was void and the deed from husband to wife in 1924 could not give validity to that which was without legal effect from the beginning. See Schaf v. Corey,50 N.D. 436, 196 N.W. 502. No other question need be considered.
We are clearly of the opinion that the mortgage in suit was void and that the judgment of the trial court must be affirmed. It is so ordered.
CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur. *Page 559