María Josefa Santoni y Suárez y su esposo Gorgonio Yunqué Sepúlveda, demandantes y apelados, *v.* G. Llinás & Cía., S. en C, demandada y apelante.

Núm. 8825.—*Sometido:* Diciembre 10, 1943. *Resuelto:* Marzo 6, 1944.

*Luis López de Victoria,* abogado de la apelante; *José Sabater,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Los esposos Gorgonio Yunqué Sepúlveda y María Josefa Santoni vivieron por espacio de treinta años en una casa de su propiedad en la población de Sabana Grande. Con excepción de la hija mayor, todos los demás hijos del matrimonio nacieron y continuaron viviendo en ella hasta que su educación exigió que la familia, con excepción del esposo, se trasladase temporalmente a Río Piedras con la intención de regresar al hogar una vez terminados los estudios. Mientras la familia vivía en Río Piedras la casa fué alquilada para hotel, pero el esposo continuó viviendo en una de sus habitaciones y hacía viajes periódicos donde su familia a Río Piedras. Estando la familia residiendo en Río Piedras, el señor Gorgonio Yunqué, por su propio derecho y como apoderado de su esposa, el diez de agosto de 1929 constituyó hipoteca sobre la casa a favor de la mercantil G. Llinás y Compañía, S. en C., en garantía de la cantidad de $5,883.81 que confesó adeudar a dicha mercantil. En la escritura de hipoteca hizo constar el señor Yunqué, por su propio derecho y como apoderado de su esposa, que no tenían derecho de hogar seguro sobre la casa, pero que en el supuesto de que lo tuvieran, expresamente lo renunciaban. Parece conveniente agregar que la escritura de poder otorgada por María Josefa Santoni a favor de su esposo no confería al mandatario facultad para renunciar al derecho de hogar seguro, y así lo acepta el abogado de la parte apelante. No

habiendo sido satisfecha la deuda, la acreedora instó procedimiento judicial para su cobro, y el 12 de marzo de 1940 le fué adjudicada la casa por la cantidad de tres mil quinientos dólares. El márshal no depositó en la secretaría de la corte de distrito los quinientos dólares, valor del *homestead,* que como veremos más adelante, reclaman los deudores, ni solicitaron éstos que dicha suma les fuese entonces entregada. Pero el 11 de abril de 1940 radicaron en la corte municipal correspondiente este pleito en reclamación de homestead. La corte inferior, en grado de apelación, dictó sentencia declarando con lugar la demanda y contra esa sentencia se interpuso el presente recurso.

Alega la demandada apelante que erró la corte de distrito al resolver, a base de los hechos expuestos, que los demandantes apelados tenían un derecho de homestead sobre la casa en cuestión. Dentro de las circunstancias del presente caso, no cabe duda de que al tiempo de constituir la hipoteca y en todo momento posterior, el señor Gorgonio Yunqué y su familia han tenido constituído su hogar seguro sobre la casa en cuestión. El hecho de que la familia hubiese trasladado su residencia a otra población, no perjudica el derecho preexistente de homestead, cuando como en el presente caso el cambio de residencia es de carácter temporal con ánimo de regresar al hogar una vez cumplido el propósito que motivó el cambio de residencia. *Courts* v. *Aldridge,* 120 F. (2d) 362, 365; *Farmers' State Bank of Belvue* v. *Weeks,* 26 P. (2d) 262; *Grotberg* v. *First Nat. Bank,* 210 N. W. 21. *Cf. Miró* v. *F. Carrera & Hno.,* 42 D.P.R. 177.

La ley que imperaba en la fecha en que se constituyó la hipoteca permitía la renuncia del derecho de homestead pero para que ésta fuera efectiva, era preciso que se hiciese de un modo expreso y con el consentimiento de ambos cónyuges. Artículo 3, Ley para definir el Homestead, aprobada el 12 de marzo de 1903; *López Rudón* v. *López,* 48 D.P.R. 324; *Quiñones* v. *Rodríguez,* 58 D.P.R. 217.

■ Ya hemos dicho que en el presente caso la esposa no prestó su consentimiento para la renuncia del hogar seguro, toda vez que el poder que confirió a su esposo y que utilizó éste para constituir la hipoteca no le confería facultades para tal renuncia. El hecho de que el esposo pueda, estar en *estoppel* para reclamar el derecho de homestead, no puede perjudicar el derecho de la esposa a exigirlo, pues de otro modo equivaldría a sancionar una enajenación del homestead sin el consentimiento de la esposa.

*Procede por lo expuesto la confirmación de la sentencia.*