**In re John Roy LIPPERT, individually and fdba JL Produce, Debtor.**

**Bankruptcy No. 89–05885.**

United States Bankruptcy Court, D. North Dakota.

Feb. 16, 1990.

Robert A. Keogh, Dickinson, N.D., for debtor.

Phillip D. Armstrong, Minot, N.D., Trustee.

Ross Espeseth, Bismarck, N.D., for Dan Kling.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court upon the Debtor's Motion to Avoid the Judicial Lien of Dan Kling pursuant to 11 U.S.C. § 522(f)(1).[1] The Debtor in his Chapter 7 schedule of exemptions has exempted as a homestead, certain real property situated in Dickinson, North Dakota. Kling, in his response to the motion, charges that his lien cannot be avoided because the property in question is not amenable to being exempted as a homestead. A hearing was held before the undersigned on January 22, 1990.

### 1.

In 1986 the Debtor and his wife purchased a home at 750 Eighth Avenue West, Dickinson, North Dakota, described as:

The South Half (S½) of Lot Three (3), and all of Lot Four (4), Block Six (6), Golf Course Subdivision Number One (1), to the City of Dickinson, Stark County, North Dakota.

They continued to reside there until the fall of 1989 when both the Debtor and his wife in order to secure employment moved to the Fargo, North Dakota area. Mrs. Lippert preceded her husband in this endeavor by temporarily moving to Detroit Lakes, Minnesota around the middle of October. The Debtor himself obtained employment with a Fargo, North Dakota firm on October 28, 1989. He did not completely relocate to Fargo at that time but instead commuted back and forth from his Dickinson home on the weekends and during the week either renting a room at a Fargo motel or sleeping in his car. He acknowledged that on occasion he spent the weekend at his wife's Detroit Lakes address. The Debtor's commuting ceased a month later when he and his wife on December 2, 1989, moved into a home located in Fargo, North Dakota where they currently remain. The Dickinson house was rented out commencing December 1, 1989.

The Debtor professes that his intention is to keep the Dickinson house retaining it as a homestead and that ultimately he would like to go back there to work. He said at the hearing that it was never his intention to give up the Dickinson property as his homestead.

On November 15, 1989, the Debtor filed for relief under Chapter 7, listing the Dickinson house as a homestead exempt under North Dakota Century Code § 28–22–02(7).

Kling is a judgment creditor by virtue of a judgment entered in state court on August 22, 1984, in the sum of $25,230.26 which, for the most part, remains unsatisfied. As such, it is a lien against the Debtor's real property and will remain so unless avoided by operation of section 522(f).

### 2.

Under section 522(b)(2)(A) of the Bankruptcy Code, a debtor may exempt from property of the estate any property that is exempt under non-bankruptcy federal law, or state or local law "that is applicable on the date of the filing of the petition". The date of the petition controls exemption eligibility. *White v. Stump,* 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *In re Harris,* 886 F.2d 1011, 1013 (8th Cir.1989); *Mansell v. Carroll,* 379 F.2d 682 (10th Cir. 1967). *In re Whitman,* 106 B.R. 654 (Bankr.S.D.Cal.1989) (the exemption is determined as of the date of filing).[2] Because North Dakota has "opted out" of the federal exemption scheme entailed in section 522(d) by its enactment of North Dakota Century Code § 28–22–17, the court must look to North Dakota law to determine the nature, extent and availability of the homestead exemption.

---

1. A "judicial lien" is any lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. 11 U.S.C. § 101(32).

2. The date of conversion from one code chapter to another may also control what exemption can be claimed. *See Koch v. Myrvold,* 784 F.2d 862 (8th Cir.1986); *In re Lindberg,* 735 F.2d 1087 (8th Cir.1984).

■ The starting point in any discussion of homestead is North Dakota Century Code § 47–18–01 which defines the limits of the homestead to wit:

> The homestead of any person, whether married or unmarried, residing in this state shall consist of the land upon which the claimant resides, and the dwelling house on that land in which the homestead claimant resides, with all its appurtenances, and all other improvements on the land, the total not to exceed $80,-000.00 in value, over and above liens or encumbrances or both. The homestead shall be exempt from judgment lien and from execution or for sale, except as otherwise provided in this chapter. In no case shall the homestead embrace different lots or tracts of land unless they are contiguous.

The homestead statutes are liberally construed and the loss or relinquishment of the homestead is not favored in the law. *Larson v. Cole*, 76 N.D. 32, 33 N.W.2d 325, 328 (1948). Strong public policy supports the statutory provisions providing for its exemption. *E.g., Vickery v. First Bank of LaCrosse*, 368 N.W.2d 758 (Minn.App. 1985). *See also In re Lepka*, 105 B.R. 638 (Bankr.Colo.1989). The 1985 decision of *Farmers State Bank v. Slaubaugh*, 366 N.W.2d 804 (N.D.1985) reiterated principles first enunciated in *Larson, supra,* relative to the existence of a homestead and its abandonment:

> "1. The law does not favor the abandonment of the homestead and the statute must be liberally construed for the protection thereof.
> 2. When a homestead status of property has been established, the burden of proving its abandonment, by the clear and convincing preponderance of the evidence, is on the party who alleges such abandonment.
> 3. To constitute an abandonment of homestead rights removal from the premises must concur with an intention to discontinue their use as a home."

*Slaubaugh* at 808, citing *Larson* at 326–27. The dominant element in abandonment is intent.

■ Closely akin to the issue of homestead abandonment is the issue of abandonment of a legal residency. Here too the law looks to action coupled with intent with intent being the principal focus. As codified by North Dakota Century Code § 54–01–26, a residence cannot be changed until another is gained and can be changed only by the union of act and intent. *See Keating v. Keating*, 399 N.W.2d 872 (N.D. 1987). The concept of residency relative either to the notion of homestead or legal residency does not contemplate actual and continuous occupancy of the property. Indeed, it is recognized that neither the fact of removal from the property or the length of time away will defeat an established homestead or place of legal residency unless such removal is coupled with the requisite intent. Although an intent to abandon either a homestead or a legal residence depends upon intent, that intent may be established by objective indicia as opposed to merely relying upon the claimant's subjective expression of intent. In *Smith v. Spafford*, 16 N.D. 208, 112 N.W. 965 (1907) the court noted that "facts and circumstances have a more convincing effect as evidence than such declarations made after matters have arisen that make such declarations essential to save the homestead." *Spafford* 16 N.D. 208, 112 N.W. at 967.

■ The issue of whether abandonment occurred in the instant case must be considered in light of the high standard of proof, the stated policy supporting the exemption· and the liberal construction accorded the exemption. In a bankruptcy context the issue is additionally framed by the situation as it existed as of the date of the bankruptcy petition filing since the exemption and the resulting ability to invoke the benefits of section 522(f)(1) are created as of that date. Where a date is critical, a past present intent regarding abandonment of homestead should not be established by subsequent events but rather by evidence existing as of the critical date. In the instant case we must focus upon the events of, and those leading up to the filing date of November 15, 1989, and not post-petition events. As of the date of filing the Debtor

had been at his new job just over two weeks. He did not have a permanent residence at the city of his new employment but was commuting from Dickinson where he continued to live in a home previously occupied by he and his wife as their sole residence and homestead. It is safe to say that at the time his life was in considerable flux. The Dickinson house was not rented out until some 15 days subsequent to filing of the bankruptcy petition and it was not until then that the Debtor and his wife moved into a less transient Fargo location. The court does not believe either from the objective facts or the statements of the Debtor himself that he and his wife had by November 15, 1989, formed an intent to permanently abandon their Dickinson home with no intention of returning. There may well have been an evolving intent to do so, but from the facts the court does not believe that intent had by any means crystallized by November 15, 1989. It is unreasonable and contrary to the well defined standards to assume a person has abandoned the homestead in advance of acquiring a new one.

Accordingly, the court concludes that as of the petition filing date of November 15, 1989, the Debtor retained a homestead in Dickinson, North Dakota and could elect to declare it exempt under North Dakota Law. As a consequence, the judicial lien held by Dan Kling is voided pursuant section to 522(f)(1) as an impairment of that exemption.

SO ORDERED.