2000 ND 189

**Keith FARSTVEET, Ryan Farstveet and Rory Farstveet, Plaintiffs and Appellees,**

v.

**Ray RUDOLPH, as Personal Representative of the EILEEN RUDOLPH ESTATE, Ray Rudolph, and Della Rudolph, Defendants and Appellants.**

No. 20000044.

Supreme Court of North Dakota.

Oct. 26, 2000.

Refiled After Petition for Rehearing July 10, 2001.

David L. Johnson, McNair, Larson & Carlson, Ltd., Fargo, for defendants and appellants.

Michael J. Maus, Hardy, Maus & Nordsven, Dickinson, for plaintiffs and appellees.

MARING, Justice.

[¶ 1] Ray Rudolph as Personal Representative of the Eileen Rudolph Estate, Ray Rudolph, and Della Rudolph, appeal from a December 16, 1999, judgment in favor of Keith Farstveet, Ryan Farstveet, and Rory Farstveet, determining that Eileen Rudolph fraudulently transferred real property to Della Rudolph. On February 16, 2000, Ray and Della Rudolph filed Chapter 13 bankruptcy, staying a sheriff's sale of the property. On April 11, 2000, the United States Bankruptcy Court for

the District of North Dakota granted relief from the automatic stay, permitting this appeal to proceed. We affirm the judgment.

## I

[¶ 2]  In March of 1994, the Farstveets purchased dairy cows from Eileen Rudolph. Unsatisfied with the cows, the Farstveets brought an action against Eileen for breach of contract, fraud, and breach of warranty for the sale of the cows. On April 30, 1998, judgment was entered in favor of the Farstveets against Eileen in the amount of $79,700.

[¶ 3]  On March 23, 1998, Eileen signed a promissory note and a mortgage on the subject property in the amount of $133,449 to her son, Ray, and his wife, Della, for bills they allegedly paid on her behalf. On that same day, Eileen transferred all of her interest in the subject property to Della by quit claim deed. In return, Ray and Della assumed the mortgage on the property to Farm Credit Services ("FCS") in the amount of $227,229.36.

[¶ 4]  The trial court found that although a large portion of the $133,449 debt was for equipment loan payments made by Ray and Della to Farmer's Merchants Bank ("FMB") on behalf of Eileen, a 1994 contract between Ray and Eileen gave Ray all of the equipment, machinery, and vehicles on the farm in exchange for Ray and Della assuming the equipment loan to FMB. Therefore, Eileen could not owe Ray for the loan payments on the equipment. In addition to this equipment loan, the trial court found the other farm expenses claimed to have been paid by Ray and Della highly questionable because Eileen had leased her land, sold her machinery, and was no longer farming.

[¶ 5]  The record establishes the subject property was appraised at $278,060, and FCS has a mortgage on the property in the amount of $227,229.36.

[¶ 6]  A portion of the subject property transferred from Eileen to Della included Eileen's homestead. In October of 1996, Eileen was admitted to a senior care facility in Valley City. Shortly after Eileen was admitted into the care facility, her grandson and his family moved into her house. Her grandson did not pay any rent. He did, however, pay the utility bills and for the general upkeep of the house. Eileen's assets were sold to pay her medical and other bills. Eileen never moved back to her house and passed away May 14, 1999, at the age of 77. Eileen's grandson continues to live in the house.

[¶ 7]  The trial court determined Eileen did not receive a reasonably equivalent value in exchange for the property she transferred to Della and she was insolvent at the time of the transfer. The trial court further determined Ray and Della were insiders and the consideration for the transfer of the property was an antecedent debt. The trial court concluded Eileen abandoned her homestead and Eileen made a fraudulent transfer of property to Della. The Rudolphs filed their Notice of Appeal on February 15, 2000.

## II

[¶ 8]  The Rudolphs first contend that the trial court erred in concluding Eileen abandoned her homestead. Specifically, they argue her absence from her home was involuntary and her intention was to return. Thus, they argue because Eileen did not abandon her homestead any subsequent transfer of her homestead property cannot be set aside as fraudulent. We disagree.

[¶ 9]  The question of abandonment of a homestead is a question of fact. *Falconer v. Farmers Union Oil Co.*, 260 N.W.2d 1, 2 (N.D.1977). Whether there

was abandonment of a homestead must be proved by clear and convincing evidence. *Larson v. Cole*, 76 N.D. 32, 33 N.W.2d 325, 326 (1948). Such a determination is made upon consideration of all the facts and circumstances presented. *See* 40 Am. Jur.2d *Homestead* § 173 at 397 (1999). A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) only if induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the court is left with a firm conviction that a mistake has been made. *Wachter v. Gratech Co., Ltd.*, 2000 ND 62, ¶ 17, 608 N.W.2d 279.

■ [¶ 10] Abandonment of a homestead is generally a waiver of the homestead exemption. *See* 40 Am.Jur.2d *Homestead* § 173 at 397. Our homestead exemption is set out at N.D.C.C § 47–18–01, and is defined as follows:

> The homestead of any person, whether married or unmarried, residing in this state shall consist of the land upon which the claimant resides, and the dwelling house on that land in which the homestead claimant resides, with all its appurtenances, and all other improvements on the land, the total not to exceed $80,000 in value, over and above liens or encumbrances or both. The homestead shall be exempt from judgment lien and from execution or forced sale, except as otherwise provided in this chapter. In no case shall the homestead embrace different lots or tracts of land unless they are contiguous.

■ [¶ 11] Homestead rights are a creature of statute and, it seems, peculiar to America. *See* 40 Am.Jur.2d *Homestead* § 2 at 251. Historically, homestead laws were established on considerations of public policy, their purpose being to protect the family to the end that it may not be without a home or opportunity for self-support. *See Swingle v. Swingle*, 36 N.D. 611, 162 N.W. 912, 915 (1917); *see also In re Lippert*, 113 B.R. 576, 578 (Bkrtcy. D.N.D.1990) (stating strong public policy supports the statutory provisions providing for the homestead exemption). More specifically, the precise intent of the homestead provisions is to place designated homestead property out of the reach of creditors while it is occupied as a home, or as otherwise stated, to secure a debtor and his family essential shelter from creditors. *See* 40 Am.Jur.2d *Homestead* § 4 at 253–54. While recognizing that the purpose of the exemption is to guarantee the family a place to live, it has also been stated that the right to claim the homestead exemption is not without limits. *Id.* at 254–55.

■ [¶ 12] If the debtor abandons her homestead rights, the property becomes subject to execution, levy, and sale to satisfy a judgment. *Farmers State Bank v. Slaubaugh*, 366 N.W.2d 804, 808 (N.D. 1985). In *Slaubaugh*, this Court outlined the law concerning the abandonment of a homestead as it was first enunciated in *Larson v. Cole*:

> 1. The law does not favor the abandonment of the homestead and the statutes must be liberally construed for the protection thereof.
>
> 2. When a homestead status of property has been established, the burden of proving its abandonment, by the clear and convincing preponderance of the evidence, is on the party who alleges such abandonment.
>
> 3. To constitute an abandonment of homestead rights removal from the premises must concur with an intention to discontinue their use as a home.

*Slaubaugh*, 366 N.W.2d at 808.

■ [¶ 13] The dominant element of abandonment is intent. *Slaubaugh*, 366 N.W.2d at 808. "To find abandonment,

the trial court must determine that the debtor has voluntarily departed from the homestead property and left without the intent to return and occupy it as a home." *Id.* (citations omitted). A debtor's subjective intent is not a reliable indicator; thus, a trial court will often look to the debtor's conduct to determine the objective intent. *Id.* In cases regarding the abandonment of the homestead where intent is the vital question at issue, the findings of the trial court who saw and heard the witnesses must be given appreciable weight. *Larson,* 33 N.W.2d at 331.

[¶ 14] The Farstveets argue Eileen abandoned her homestead once she moved off the property, sold her assets, and conveyed the property to her daughter-in-law, Della. We have stated that physical absence in itself does not constitute abandonment, but is evidence to be taken into consideration in determining abandonment. *Nelson v. Griggs County,* 56 N.D. 729, 219 N.W. 225, 226 (1928). However, in order for the homestead exemption to be lost any physical absence from the home must be voluntary. *Larson,* 33 N.W.2d at 329. This Court has long recognized that involuntary or compulsory absences from the home have never per se constituted relinquishment of the homestead rights. *See Larson,* 33 N.W.2d at 329–30 (finding defendant's departure from the homestead for purposes of serving in the army was involuntary); *Meidinger v. Security State Bank of Medina,* 55 N.D. 301, 213 N.W. 850, 851 (1927) (finding that plaintiff's departure from his house because of his physical condition was an absolute necessity, and not a voluntary act); *Grotberg v. First National Bank of Valley City,* 54 N.D. 548, 210 N.W. 21, 24 (1926) (finding that plaintiff did not abandon her homestead when she and her family left it to seek treatment for her mental illness); *Swingle,* 162 N.W. at 915 (finding

that when a husband forced his wife to leave their homestead through violence, threats, abuse, and fear, her absence from the homestead did not constitute an abandonment as a matter of law). It is absence from the home coupled with the clear intention to abandon the homestead that is sufficient proof of abandonment. *Larson,* 33 N.W.2d at 329.

[¶ 15] The undisputed evidence shows that in October of 1996, after Eileen began experiencing difficulty with the prosthesis in her knees, she left her farmstead and admitted herself into a hospital in Valley City. Later, she developed an infection in her knees, whereby the prosthesis came loose. Because Eileen needed assistance walking, she was then moved to the senior health care facility in Valley City, where she remained until her death on May 14, 1999. Eileen lived on her farmstead at all times prior to her being admitted into the senior care facility. Whether Eileen left her homestead voluntarily or involuntarily is a question of fact. The trial court did not make explicit findings as to this issue. However, even assuming Eileen's absence from her home was involuntary, we conclude the transfer by quit claim deed of her homestead is sufficient evidence of abandonment.

[¶ 16] On the issue of abandonment, courts have stated that there is no more convincing proof that abandonment has occurred than the sale of the homestead. *In re Cole,* 205 B.R. 382, 385 (Bkrtcy.E.D.Tex.1997); *In re Michael,* 49 F.3d 499, 501 (9th Cir.1995) (stating there can be no homestead exemption if there is no homestead property); *In re Levy,* 185 B.R. 378, 387 (Bkrtcy.S.D.Fla.1995) (stating as a general rule, homestead rights are extinguished by a conveyance of the premises by the homestead claimant). Upon the conveyance of the disputed premises, a homestead claimant relinquishes any

homestead rights. *See* 40 Am.Jur.2d *Homestead* § 179 at 401.

[¶ 17] On March 23, 1998, Eileen transferred all of her real property by quit claim deed, including her homestead to Della. Eileen received no monies in return for the transfer of the property.[1] Upon executing the quit claim deed Eileen no longer had any homestead rights. Therefore, the trial court's finding of abandonment of the homestead was not clearly erroneous.

### III

[¶ 18] The Rudolphs next contend the transfer of property from Eileen to Della was not a fraudulent transfer. Specifically, they argue Eileen had a right to prefer a creditor who was a family member over any other creditor who was not related to her. They further argue the antecedent debt given in exchange for the transfer of property from Eileen to Della constitutes fair consideration. We disagree.

[¶ 19] In 1985, the State Legislature repealed the Uniform Fraudulent Conveyance Act, N.D.C.C. § 13–02, and replaced it with the Uniform Fraudulent Transfer Act. *See* 1985 N.D. Sess. Laws ch. 186, §§ 1–10. The purpose of the Uniform Fraudulent Transfer Act, much like the Uniform Fraudulent Conveyance Act, is "to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." UFTA § 3, cmt. (2). The Uniform Act in its entirety can be found at North Dakota Century Code chapters 13–02.1–01 to 13–02.1–10. In construing a statute derived from a uniform

act, we seek "to effectuate its general purpose to make uniform the law of those states which enact it." N.D.C.C. § 1–02–13. Special deference is, therefore, given to decisions of other jurisdictions interpreting the uniform act. *Jahner v. Jacob,* 515 N.W.2d 183, 184 (N.D.1994).

[¶ 20] Under the revised Act, fraudulent transfers are broadly separated into two classifications: actual fraud and constructive fraud. *See* N.D.C.C. §§ 13–02.1–04 and 13–02.1–05. A fraudulent transfer may be attacked under either theory. Actual or intentional fraud requires a showing of intent while constructive fraud requires a showing of inadequate consideration coupled with insolvency. *See In re Janz,* 140 B.R. 256, 258 (Bkrtcy.D.N.D. 1991), *aff'd,* 980 F.2d 734 (8th Cir.1992). Questions regarding a constructive fraudulent transfer are questions of fact that will not be set aside on appeal unless clearly erroneous.

[¶ 21] One of the innovations of the Uniform Fraudulent Transfer Act is its adoption of the preferential transfer concept. *See Prairie Lakes Health Care System v. Wookey,* 1998 SD 99, ¶ 14, 583 N.W.2d 405. It also has been described "as constructive fraud or fraud in law." *Id.* It is found at N.D.C.C. § 13–02.1–05(2) and states in relevant part:

2. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had

---

1. Had Eileen received proceeds from Della in exchange for the transfer of the property, a homestead exemption would have continued to exist in those proceeds. *See generally* N.D.C.C. § 47–18–16 (stating that the proceeds of the sale beyond the amount necessary to satisfy a lien, and not exceeding the

amount of the homestead exemption, shall be entitled to the same protection against legal process as the law gives to the homestead). Thus, because Eileen owned no homestead property nor received any proceeds in exchange for the transfer of her homestead property, her exemption was extinguished.

reasonable cause to believe that the debtor was insolvent.

[¶ 22] Section 13–02.1–05(2), "renders a preferential transfer—i.e., a transfer by an insolvent debtor for or on account of an antecedent debt—to an insider vulnerable as a fraudulent transfer when the insider had reasonable cause to believe that the debtor was insolvent." UFTA § 5, cmt. (2). While it has been held that debtors generally may prefer one creditor over another in applying assets to discharge their obligations, § 13–02.1–05(2), curtails this privilege if the debtor is insolvent at the time and the preference is to an insider. *Wookey*, 1998 SD 99, ¶ 14, 583 N.W.2d 405. The premise behind § 13–02.1–05(2), "is that an insolvent debtor is obligated to pay debts to creditors not related to him before paying those who are insiders." UFTA, Prefatory Note. The drafters of the revised Act intended this provision to be an attempt at diminishing the sometimes unfair advantages insiders possess when they are familiar with the debtor's financial status. *Wookey*, 1998 SD 99, ¶ 14, 583 N.W.2d 405.

[¶ 23] Constructive fraudulent transfers are established conclusively, without regard to the actual intent of the parties, when they concur as provided in N.D.C.C. § 13–02.1–05. UFTA § 4, cmt.(5). "To void a transfer under this section the following elements must be established: (1) The creditor's claim arose before the transfer; (2) the transfer was made to an insider; (3) the transfer was made for an antecedent debt; (4) the debtor was insolvent at the time; and (5) the insider had reasonable cause to believe the debtor was insolvent." *Wookey*, 1998 SD 99, ¶ 15, 583 N.W.2d 405.

[¶ 24] The evidence before the trial court establishes each element. First, the Farstveets' claim arose before Eileen transferred her property to Della. In 1998, the Farstveets brought an action against Eileen over the sale of certain cows. This action was commenced before Eileen transferred all of her real property to Della. Second, the transfer of property from Eileen to Della was a transfer made to an insider. Della was Eileen's daughter-in-law; therefore, she is considered an insider as defined by N.D.C.C. § 13–02.1–01(7)(a). Third, the transfer was made in consideration of an antecedent debt. Ray and Della allegedly paid a number of bills on Eileen's behalf including farm expenses and loan payments. These payments constituted the consideration for the transfer of real property from Eileen to Della. Fourth, Eileen was insolvent at the time she transferred the subject property to Della. Once Eileen transferred all of her real property to Della she was without any assets. And, finally Della had reasonable cause to believe Eileen was insolvent because her husband, Ray, testified that at the time Eileen transferred her property to Della, he and Della had sold all of Eileen's assets. Therefore, under N.D.C.C. § 13–02.1–05(2), the trial court's finding that Eileen's transfer of the subject property was fraudulent was not clearly erroneous. Accordingly, the judgment of the trial court is affirmed.

[¶ 25] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ.

MARING, Justice.

**On Petition for Rehearing.**

[¶ 26] Ray Rudolph, individually and as Personal Representative of the Eileen Rudolph Estate, and Della Rudolph filed a Petition for Rehearing. We granted the petition, restored this cause to the calendar, requested briefs and heard arguments. On direct appeal, we affirmed the

judgment of the trial court, concluding Eileen Rudolph abandoned her homestead and fraudulently transferred real property to Della Rudolph. Upon rehearing, we reverse in part the judgment of the trial court and remand for further proceedings consistent with this opinion.

I

[¶ 27] On Petition for Rehearing, the Rudolphs contend Eileen did not abandon her homestead when she transferred it to her daughter-in-law, Della. Upon further consideration, we agree.

[¶ 28] In our original opinion, we stated "there is no more convincing proof that abandonment has occurred than the sale of the homestead," *Farstveet v. Rudolph*, 2000 ND 189, ¶ 16, 2000 WL 1594223, and in support of this proposition, we cited several bankruptcy cases. *In Re Cole*, 205 B.R. 382, 385 (Bkrtcy.E.D.Tex. 1997); *In Re Michael*, 49 F.3d 499, 501 (9th Cir.1995); *In Re Levy*, 185 B.R. 378, 387 (Bkrtcy.S.D.Fla.1995). We are persuaded, however, that those cases are distinguishable from the instant case because they involve abandonment in the context of bankruptcy proceedings. *In Re Cole* and *In Re Levy* involved situations where the debtor, after conveying the homestead, filed a bankruptcy petition and then attempted to claim the homestead exemption. *In Re Cole*, 205 B.R. at 385; *In Re Levy*, 185 B.R. at 381–82. *In Re Michael* also involved a debtor's attempt to claim a homestead exemption post-petition in bankruptcy proceedings and specifically applied Montana law. 49 F.3d at 500–01. In a bankruptcy context, the issue of whether abandonment has occurred must be considered in light of the situation as it existed on the date the petition was filed "since the exemption and the resulting ability to invoke the benefits of section 522(f)(1) are created as of that date." *In Re Lippert*, 113 B.R. 576, 578 (Bkrtcy. D.N.D.1990).

[¶ 29] Such was not the case here. On March 23, 1998, and before judgment was entered against Eileen, Eileen transferred her homestead to her daughter-in-law, Della. A creditor cannot set aside as fraudulent a transfer of property that the debtor could have claimed as exempt. *Jahner v. Jacob*, 515 N.W.2d 183, 186 (N.D.1994) (analyzing our decision in *Congress Candy Co. v. Farmer*, 73 N.D. 174, 12 N.W.2d 796 (1944)). "[A] creditor may challenge a transfer for fraud only if the property would be subject to levy and execution if revested in the transferor." *Id.* Because Eileen could have claimed the homestead property exempt while she possessed title to it, the Farstveets cannot enforce their claim against the homestead after Della acquires title to it. Eileen's transfer of her homestead in this context does not constitute abandonment. In order for the transfer to be challenged as fraudulent under these circumstances, abandonment must be established based upon facts independent of the transfer of the homestead. To the extent this conclusion is inconsistent with our initial opinion, that opinion is modified. *Farstveet*, 2000 ND 189.

[¶ 30] We now turn to the issue of whether there is some evidence other than the transfer to support the trial court's findings that Eileen abandoned her homestead.

[¶ 31] Homestead rights are not easily lost, and traditionally we have jealously protected such rights. This Court has concluded a debtor's removal from his homestead due to poor health does not constitute abandonment. *Meidinger v. Security State Bank of Medina*, 55 N.D. 301, 213 N.W. 850, 851 (1927). In *Meidinger*, after the debtor left his home, his furni-

ture was sold at a public auction and his house was leased to his son-in-law. *Id.* The removal of the debtor from his homestead for the purpose of seeking care, when he was not able to care for himself, is not abandonment of the homestead. *Id.* The debtor, rather, was forced to leave due to necessity, and therefore, his departure from his home is not a voluntary act. *Id.*

[¶ 32] This Court has also concluded a defendant's absence from his home and the subsequent leasing of his homestead are not sufficient evidence of abandonment. *Larson v. Cole*, 76 N.D. 32, 33 N.W.2d 325, 329–30 (1948). In *Larson*, our Court stated:

> It is claimed on behalf of the plaintiff that the defendant's intent to abandon the homestead rights in these premises is shown by his offering them for sale and giving a written option for their purchase to the plaintiff[,] by disposing of much of his household furniture, by leaving the State and renting the premises to the plaintiff, and by his general conduct. Any of these circumstances coupled with clear intention to abandon the homestead would be sufficient proof of abandonment. All of them together would be insufficient unless coupled with such intent.

*Id.* at 329. There was no other clear and convincing evidence suggesting defendant intended to abandon his home, and accordingly, this Court concluded the defendant did not abandon his homestead. *Id.* at 330.

[¶ 33] The trial court found by clear and convincing evidence that Eileen abandoned her homestead because after she was taken to the senior care facility, her grandson, Wade Rudolph, and his entire family moved into her house; Eileen never moved back; the grandson never paid any money to Eileen; and the family sold off

all of Eileen's assets to pay her medical and other bills.

[¶ 34] The trial court did not make a specific finding Eileen originally left her home voluntarily. The evidence in the record indicates she left her home involuntarily because she began to experience difficulty with the prostheses in her knees and was hospitalized. She later was moved to the senior care facility where she remained because of her physical condition. To find abandonment, it must be voluntary and without an intention to return. *Larson*, 33 N.W.2d at 329. We have long recognized that involuntary or compulsory absences from the home have never per se constituted relinquishment of the homestead rights. *See Larson*, 33 N.W.2d at 329; *Meidinger*, 213 N.W. at 851; *Grotberg v. First Nat. Bank*, 54 N.D. 548, 210 N.W. 21, 24 (1926); *Swingle v. Swingle*, 36 N.D. 611, 162 N.W. 912, 915 (1917). Instead, it is absence from the home coupled with the clear intention to abandon the homestead that is sufficient proof of abandonment. *Larson*, 33 N.W.2d at 329. There is no evidence indicating Eileen left her home voluntarily, remained away voluntarily, or that she made any declarations regarding her intent never to return to her homestead.

[¶ 35] The removal of Eileen's assets from her household and the subsequent sale of these assets do not in themselves constitute abandonment. In both *Meidinger* and *Larson*, the debtors' removal and sale of their household goods and furniture were insufficient evidence to establish abandonment even when considered with other circumstances. Here the trial court specifically found that Eileen's household property was sold to pay her medical and other bills.

[¶ 36] Moreover, permitting Eileen's grandson to move into the homestead did not conclusively establish aban-

donment of the premises. Our Court has stated "[t]hat the defendant leased the property is not necessarily an indication of abandonment of homestead." *Larson*, 33 N.W.2d at 330. Such actions are not inconsistent with an intent to return to the homestead because it is not uncommon for homeowners while away from their homes to request friends or relatives to reside in their homes so as to provide upkeep and to safeguard the property. Eileen's grandson did not pay rent, but he did pay the utility bills and provide for the general upkeep of the house. Without evidence of a clear intent never to return to her homestead, all of the circumstances found by the trial court are collectively insufficient to establish abandonment.

[¶ 37] Although voluntary and not compulsory absence can be evidence of abandonment and the leasing of the homestead property can be some evidence, but not alone conclusive evidence, of intent to abandon, we conclude, after a review of the entire record, the trial court could not have found that there is clear and convincing evidence to establish Eileen's absence from her homestead was voluntary or that she intended never to return to her homestead. Therefore, the trial court erred when it found Eileen abandoned her homestead. Our prior affirmance of the trial court on this issue is modified. *Farstveet*, 2000 ND 189.

## II

[¶ 38] In our original opinion, we concluded the trial court's finding that Eileen's transfer of the subject property was fraudulent was not clearly erroneous. We reached this decision after we concluded Eileen abandoned her homestead. Once Eileen abandoned her homestead there was no question that the homestead and other property were assets within the meaning of the Uniform Fraudulent

Transfer Act. N.D.C.C. § 13–02.1–01(2). However, because we modify our opinion and conclude Eileen did not abandon her homestead, the issue becomes whether the non-exempt property qualifies as an asset within the meaning of the Act.

[¶ 39] The Rudolphs argue the non-exempt property transferred from Eileen to Della is not an asset for purposes of the Uniform Fraudulent Transfer Act and, therefore, cannot be the subject of a fraudulent transfer. If the non-exempt property is an asset within the meaning of the Act, the transfer of such property is a fraudulent transfer under N.D.C.C. § 13–02.1–05(2) based on our opinion in *Farstveet v. Rudolph*, 2000 ND 189, ¶¶ 23, 24. If, however, the property is not an asset within the meaning of the Act, the property is not subject to a fraudulent transfer under N.D.C.C. § 13–02.1–05(2).

[¶ 40] As defined by the Act, an " '[a]sset' means property of a debtor, excluding property to the extent it is encumbered by a valid lien, property to the extent it is generally exempt under non-bankruptcy law, or an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant." N.D.C.C. § 13–02.1–01(2). Property which is encumbered by valid liens exceeding the value of the property is not an asset within the meaning of the Act and is not subject to a fraudulent transfer.

[¶ 41] Relying on § 13–02.1–01(2), N.D.C.C., the Rudolphs argue the non-exempt property is encumbered by valid liens that exceed the value of the property. The trial court, however, did not determine the separate values of the homestead and the non-exempt property, and we are, therefore, unable to conclude whether there is equity in the non-exempt

property.[2] Once the court establishes a value for the non-exempt property, it must subtract the mortgage and judgment lien to determine if there is equity. Although the mortgage is enforceable against the entire property, the Rudolphs can require the mortgagor to resort to the non-homestead property first, even though doing so would defeat the rights of a junior lienholder.[3] *Douglas County State Bank v. Steele,* 54 N.D. 686, 210 N.W. 657, 659 (1926). *See also* N.D.C.C. § 35–01–15. If the value of the non-exempt property is greater than the total value of the mortgage and the judgment lien, then the remaining equity in the property is subject to the Uniform Fraudulent Transfer Act and available to satisfy the Farstveet judgment. *See Farstveet,* 2000 ND 189, ¶¶ 23, 24 (concluding Eileen's transfer of the non-exempt property was a fraudulent transfer under N.D.C.C. § 13–02.1–05(2)).

[¶ 42] Accordingly, we modify our initial opinion and reverse that part of the trial court's judgment finding the homestead was abandoned and remand for findings whether there is equity in the non-exempt property. If the trial court concludes there is equity in the non-exempt property, then its finding that Eileen's transfer of the non-exempt property was fraudulent was not clearly erroneous and it may fashion an appropriate remedy for the Farstveets.

[¶ 43] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, J.

KAPSNER, Justice, concurring and dissenting.

[¶ 44] I agree with the modification of our prior opinion to the extent that we clarify the quitclaim deed alone is insufficient to demonstrate abandonment of the homestead. To hold that the deed alone is sufficient would be contrary to the right of the owner of homestead property to claim the proceeds of the transferred property as exempt. *See generally* N.D.C.C. § 47–18–16; *Farstveet v. Rudolph,* 2000 ND 189, ¶ 17 n. 1. Prior cases have made it clear a creditor cannot set aside as fraudulent a transfer of property that the debtor could have claimed as exempt. *See, e.g., Jahner v.. Jacob,* 515 N.W.2d 183, 186 (N.D.1994) ("[A] creditor may challenge a transfer for fraud only if the property would be subject to levy and execution if revested in the transferor.").

[¶ 45] We should make clear the execution and delivery of the quitclaim deed is merely evidence that must be considered in the context of other evidence to determine whether a person has abandoned the homestead. I do not agree that the deed is irrelevant, if that is what is meant by the majority on Petition for Rehearing, at ¶ 29, when it says: "[A]bandonment must be established based upon facts independent of the transfer of the homestead." Although the deed alone may be legally insufficient to establish abandonment, no case that I have located would indicate that the execution and delivery of a deed would be irrelevant evidence on the issue of abandonment.

---

2. Although the trial court stated "the subject real estate was appraised at $278,060," it did not determine how much of that amount constituted the homestead and how much constituted the non-exempt property. Under N.D.C.C. §§ 47–18–06 through 47–18–11, the judgment creditor may request a state district court to appoint appraisers to appraise the homestead, and the court upon notice and

hearing may then appoint three disinterested appraisers who report back to the court with their determination as to the value of the homestead.

3. If the non-exempt property is insufficient to satisfy the mortgage, then the mortgagor may resort to the homestead property. N.D.C.C. § 47–18–04.

[¶ 46] I must further disagree with the result of the majority because it effectively holds that, as a matter of law, the following facts cannot be considered when determining abandonment: continuing absence from the homestead for medical reasons; the sale of all cattle and machinery; the sale of all household goods; the lease of the property to a family member; and the execution and delivery of a deed to the homestead. Instead, the majority on Petition for Rehearing, at ¶ 36, holds that all of those things must be discounted and something "independent" must be proven, which, I believe, is the effect of the statement: "Without evidence of a clear intent never to return to her homestead, all of the circumstances found by the trial court are collectively insufficient to establish abandonment."

[¶ 47] The involuntary removal from the homestead cannot, as a matter of law, establish abandonment. *Larson v. Cole,* 76 N.D. 32, 39, 33 N.W.2d 325, 329 (1948). But because the initial removal was involuntary does not mean the homesteader cannot subsequently form an intent to abandon. *Nelson v. Griggs County,* 56 N.D. 729, 735, 219 N.W. 225, 226 (1928). All of the subsequent events that the majority describes as "collectively insufficient" should be considered as relevant evidence because our prior cases have recognized conduct is relevant to establish intent to abandon. *See, e.g., Larson,* 76 N.D. at 39, 33 N.W.2d at 329; *Nelson,* 56 N.D. at 733, 219 N.W. at 226.

[¶ 48] Abandonment is a question of fact, based upon the intent of the property owner. *Falconer v. Farmers Union Oil Co.,* 260 N.W.2d 1, 2 (N.D.1977).

> To find abandonment, the trial court must determine that the debtor has voluntarily departed from the homestead property and left without the intent to return and occupy it as a home. *Grotberg v. First Nat. Bank,* 54 N.D. 548, 210 N.W. 21 (1926); *Smith v. Spafford,* 16 N.D. 208, 112 N.W. 965 (1907). The dominant element in abandonment is intent. Because a debtor's subjective intent is not a reliable indicator, a trial court often will look to the objective intent which the debtor's conduct manifests. See 1 *American Law of Property,* Sec. 5.113, p. 886 (A. James Casner, ed.1952). See also 2A R. Powell, *The Law of Real Property,* Sec. 263[6], at 406.12(14–15).

*Farmers State Bank v. Slaubaugh,* 366 N.W.2d 804, 808 (N.D.1985).

[¶ 49] Issues of intent are particularly for the trial court to determine. Domicile, like abandonment, is an issue in which intent is determinative:

> Domicile is a question of fact. *Keating v. Keating,* 399 N.W.2d 872, 874 (N.D.1987). To find a change of domicile, the fact of a physical presence at a residence must concur with the intent to make that place the legal residence, "the union of act and intent." NDCC 54–01–26(7); *Schillerstrom v. Schillerstrom,* 75 N.D. 667, 32 N.W.2d 106, 115 (1948). The person's intent must be determined from the person's conduct and declarations. *Schillerstrom,* 32 N.W.2d at 115. A person's declarations about his home, residence, or domicile are evidence of his intent, including a statement contained in a formal legal document like a will. Restatement (Second) on Conflict of Laws vol. 1, 81–83, *Special Note on Evidence For Establishment of a Domicile of Choice* (1969). The trial court must find the fact of domicile from the evidence of the person's acts *and* declarations.

"Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made. *Keating,* 399 N.W.2d at 874. A finding of fact may also be clearly erroneous if it is based on a mistaken view of the applicable law. *Estate of Ostby,* 479 N.W.2d 866 (N.D.1992). In this case, we conclude that the trial court determined John's domicile with a mistaken view of applicable law.

*In re Estate of Burshiem,* 483 N.W.2d 175, 180 (N.D.1992).

[¶ 50] In *Burshiem,* this court remanded the matter to the trial court for application of the correct law in making a determination of domicile, holding that the trial court failed to consider the evidence of intent contained in the will executed by the decedent. *Id.* at 182. Like the will in *Burshiem,* the deed in the present case is evidence that should be considered with other evidence on the matter of intent. The trial court did so.

[¶ 51] In a case with some similar facts, the trial court found that abandonment did not occur, and this court affirmed the finding. *Meidinger v. Sec. State Bank of Medina,* 55 N.D. 301, 303, 213 N.W. 850, 851 (1927) (finding no abandonment where the elderly debtor left his home, his furniture was sold at public auction, and his house was leased to his son-in-law). However, each case must be determined on its evidence: "Citations of cases are of little value in determining the issue [abandonment] involved here. The issue is so much· a matter of fact that it becomes necessary to determine each case largely by itself." *Nelson,* 56 N.D. at 734, 219 N.W. at 226; *accord Larson,* 76 N.D. at 42, 33 N.W.2d at 331.. Unless the evidence presented to the trial judge admits of only one inference and thus becomes a matter of law, we do not reverse a trial court even though we might have made a different finding. A choice between two permissible views of the evidence is not clearly erroneous. *In re Estate of Nelson,* 553 N.W.2d 771, 774 (N.D.1996) (holding that a trial court's finding of lack of capacity was not clearly erroneous even though there was evidence supporting a contrary finding).

[¶ 52] We have recognized that forfeiture of the homestead right is not favored, and therefore a heightened burden of proof is employed to find abandonment. · *Larson,* 76 N.D. at 38, 33 N.W.2d at 328. However, the trial court recognized the higher burden of proof. Here, the trial court found "by clear and convincing evidence that Eileen abandoned her homesteaded property. Thus, the transfer of the once homesteaded property to Della was fraudulent." I am not convinced that such finding was clearly erroneous. I would affirm the decision of the trial court.

[¶ 53] DALE V. SANDSTROM, J.