2004 ND 196

**In the Matter of the ESTATE OF Lucille E. BERGMAN, Deceased.**

**Lynn Bergman, as nominated Personal Representative of the Estate of Lucille E. Bergman, Petitioner**

v.

**North Dakota Department of Human Services, Respondent and Appellant.**

**Lynn Bergman, as nominated Personal Representative of the Estate of Lucille E. Bergman, Plaintiff**

**North Dakota Department of Human Services, Intervenor and Appellant**

v.

**Doug Bergman and Robert Bergman, Defendants and Appellees.**

Nos. 20030356, 20030357.

Supreme Court of North Dakota.

Oct. 20, 2004.

Jean R. Mullen, Assistant Attorney General, Office of Attorney General, Bismarck, for appellant.

Richard W. Olson, Fisher & Olson, Ltd., Grand Forks, for appellees.

KAPSNER, Justice.

[¶ 1] The North Dakota Department of Human Services appealed from a judgment dismissing its claim against the Estate of Lucille Bergman for Medicaid benefits provided to Lucille Bergman's deceased husband, Carl Bergman, and dismissing the Estate's action to void transfers made by Lucille Bergman to two of her sons, Robert and Doug Bergman, shortly before her death. We conclude the trial court erred in applying Medicaid law and our decisions in *Estate of Wirtz*, 2000 ND 59, 607 N.W.2d 882 and *Estate of Thompson*, 1998 ND 226, 586 N.W.2d 847. We reverse the judgment and remand for proceedings consistent with this opinion.

I

[¶ 2] Carl Bergman resided in a nursing home from June 1, 1996, until his death on April 12, 1998, and he received $31,425.64 in Medicaid benefits from the Department during that time. In 1993, Carl Bergman purchased a $50,000 single payment annuity from Lutheran Brotherhood. The annuity was held in Lutheran Brotherhood investment accounts and was wholly owned by Carl Bergman. In 1995, he transferred about $5,000 from the annuity to a Lutheran Brotherhood joint money market account for himself and Lucille Bergman. In 1996, Carl Bergman applied for Medicaid benefits, and in order to qualify his household for Medicaid benefits under the impoverished spouse rules, he transferred the proceeds from the annuity and the joint money market account to his community spouse, Lucille Bergman, who used the funds to open a Lutheran Brotherhood money market account in her name. In 1998, Lucille Bergman transferred $40,000 from her money market account to a Lutheran Brotherhood investment account, and she retained $13,790.24 in the money market account. In July 2001, Lucille Bergman arranged to withdraw $250 a month from her money market account for deposit into her personal checking account.

[¶ 3] Lucille Bergman was diagnosed with cancer in 2002, and she was informed by counsel that her estate may be responsible for reimbursement of Medicaid benefits provided to Carl Bergman. On November 6, 2002, Lucille Bergman withdrew $10,000 from her money market account

for her funeral expenses. On November 11, 2002, Lucille Bergman redeemed the shares in her Lutheran Brotherhood investment account and transferred the funds into her money market account. On December 6, 2002, Lucille Bergman withdrew $34,000 from her money market account, and she deposited that money in her personal checking account. On December 6, 2002, Lucille Bergman signed a power of attorney granting Robert Bergman authority to withdraw funds from her checking account. On December 6, 2002, Robert Bergman withdrew $500 from Lucille Bergman's checking account. On December 9, 2002, Lucille Bergman issued a $30,000 check to Robert Bergman for gifts to her four children and a $2,800 check to Doug Bergman for gifts to her four children and her grandchildren. Lucille Bergman died on December 28, 2002.

[¶ 4] The Estate of Lucille Bergman sought to void the transfers to Robert and Doug Bergman, and the Department filed a claim against the Estate for the cost of Medicaid benefits, plus interest, provided to Carl Bergman. The trial court granted the Department's motion to intervene in the Estate's action against Robert and Doug Bergman. The court thereafter dismissed the Estate's action against Robert and Doug Bergman and the Department's claim against the Estate, reasoning:

> Using the North Dakota definition of the estate subject to probate, there was no property in the recipient's estate, as determined at the time of his death, that would be available for recovery in this action. Carl Bergman transferred ownership of the annuity on December 20, 1996, long before his death on April 12, 1998, and he had no interest in the annuity at the time of his death. No part of the value of the annuity was included in his probate estate. There is no claim that the transfer by Carl was fraudulent in any way. It was a legal transfer

permitted by federal law and the funds were not considered available for payment of medical costs in the Medicaid qualification process.

> The Court finds that the claim of the State of North Dakota must fail against the estate of Lucille Bergman since there were no assets in the probate estate of Carl Bergman that are traceable to Lucille Bergman and which were not the separate property of Lucille Bergman.

> As another ground for denial of the claim, even assuming that the expanded definition of the probate estate was somehow adopted in North Dakota, the expanded definition requires that Carl must have had some interest of title in the asset *at the time of his death*. He had no such interest. He had transferred all of his right, title and interest in the annuity to his wife in 1996. This is not a case where the decedent recipient had a statutory homestead interest at the time of his death in the family home previously transferred to his wife. See *Estate of Jean Gullberg*, [652 N.W.2d 709 (Minn.Ct.App.2002)]; and *Estate of Jobe*, 590 N.W.2d 162 (MN Ct.App.1999). In those cases, the transferor of the property retained a statutory homestead interest during his lifetime, notwithstanding the transfer. In the case of joint or survivor interests, life estates and other arrangements, the list of retained interests clearly evidences a clear intent, expressed in the optional federal definition of probate estate, to include those non-probate transfers where the transferor retains an interest in the property up until the time of death, (or more properly, the moment before death) when it passes without probate proceedings to the survivor or beneficiary. No such interest is involved in this case.

The assets sought to be applied in this case to reimbursement of the Medicaid claim are not available and the state's claim must be denied to that extent.

Lucille gifted some of the annuity funds to her children. She had the right to do that. She could have spent all of the disputed funds on her living expenses and other needs, and the state would not have even had a colorable claim to the funds. She should not be penalized for preserving some of those funds that were not fraudulently transferred by her husband to her in 1996, and were not fraudulently transferred by her before her death. The funds were her *separate property*, to do with as she pleased. See *Estate of Wirtz*, [2000 ND 59, 607 N.W.2d 882].

The action to obtain the funds as an alleged fraudulent transfer in 02–C–01694 is also dismissed, with prejudice. There is no fraudulent transfer shown and the funds are released from any further restriction.

## II

[¶ 5] The Department argues the trial court erred in determining there were no assets in the Estate of Lucille Bergman which were traceable to Carl Bergman under Medicaid law and our decisions in *Wirtz*, 2000 ND 59, 607 N.W.2d 882, and *Thompson*, 1998 ND 226, 586 N.W.2d 847. The Department argues Lucille Bergman's gifts of assets traceable to Carl Bergman to avoid reimbursing the Medicaid program were a fraud on her creditors, including the Department.

[¶ 6] In *Thompson*, 1998 ND 226, ¶ 15, 586 N.W.2d 847, this Court construed applicable Medicaid law in N.D.C.C. § 50–24.1–07 and 42 U.S.C. § 1396p(b) to allow states to trace the assets of recipients of medical assistance and to recover the benefits paid when the recipient's surviving

spouse dies. We said "[b]ecause the expansive federal definition of 'estate' in 42 U.S.C. § 1396p(b)(4) extends only to assets in which the medical assistance benefits recipient 'had any legal title or interest in at the time of death,' it is a matter of little moment whether the Department seeks to recover the benefits paid by filing a claim in the estate of the recipient after the death of the recipient's surviving spouse or by filing a claim in the surviving spouse's estate." *Thompson*, at ¶ 15 n. 3.

[¶ 7] In *Wirtz*, 2000 ND 59, 607 N.W.2d 882, we again considered the meaning of those federal and state Medicaid statutes. We relied on 42 U.S.C. § 1396p(b) to provide meaning to N.D.C.C. § 50–24.1–07, stating the federal statute limits the situations in which states can recover Medicaid benefits from the surviving spouse's estate. *Wirtz*, at ¶ 7. In *Wirtz*, at ¶ 14, we construed those statutes to allow states to trace a recipient's assets and to recover money from the estate of a recipient's surviving spouse:

We hold any assets conveyed by [the institutionalized spouse] to [the community spouse] before [the institutionalized spouse's] death and traceable to [the community spouse's] estate are subject to the department's recovery claim. However, the recoverable assets do not include all property ever held by either party during the marriage. *Cf. Estate of Jobe*, 590 N.W.2d 162, 166 (Minn.Ct. App.1999). 42 U.S.C. § 1396p(b) contemplates only that assets in which the deceased recipient once held an interest will be traced. It does not provide that separately-owned assets in the survivor's estate, or assets in which the deceased recipient never held an interest, are subject to the department's claim for recovery. Thus, recovery from a surviving spouse's separately-owned assets because of a past obligation to pay a now

deceased Medicaid recipient's medical expenses as necessaries, or recovery from the surviving spouse's entire estate, including assets not traceable from the recipient, is not allowed.

[¶ 8] Our decisions in *Wirtz* and *Thompson* authorize the Department to trace assets formerly held by a Medicaid recipient and to recover from the estate of the recipient's surviving spouse assets in which the deceased recipient once had an interest. The trial court's reasoning that there was no property in Carl Bergman's probate estate at the time of his death that was traceable to Lucille Bergman and that he had no interest in the annuity at the time of his death is inconsistent with our decision in *Wirtz*, 2000 ND 59, ¶ 14, 607 N.W.2d 882, that "any assets conveyed by [the institutionalized spouse] to [the community spouse] before [the institutionalized spouse's death] and traceable to [the community spouse's] estate are subject to the department's recovery claim." *See also Thompson*, 1998 ND 226, ¶ 15, 586 N.W.2d 847.

[¶ 9] Here, before his death and to qualify his household for Medicaid benefits, the institutionalized spouse, Carl Bergman, conveyed assets to the community spouse, Lucille Bergman. Before her death, Lucille Bergman transferred assets in which Carl Bergman once had an interest, and the issue is whether those assets are subject to a claim by the Department for Medicaid benefits provided to Carl Bergman. Doug and Robert Bergman argue those assets were outside Lucille Bergman's estate at the time of her death, and there is no authority allowing the Department to recover funds that are outside of a community spouse's estate at the time of her death.

[¶ 10] Although those assets may not have been in Lucille Bergman's estate when she died, she purported to gift those assets to her children in contemplation of death and after being informed of a possible claim by the Department. Under N.D.C.C. § 30.1–18–10, a personal representative may recover property transferred by the decedent to avoid the decedent's creditors. Under N.D.C.C. § 50–24.1–07, the obligation to repay Medicaid benefits arises upon receipt of the benefits, *see Matter of Estate of Hooey*, 521 N.W.2d 85, 87 (N.D.1994), and the Department has a claim against assets traceable to the institutionalized spouse in the surviving community spouse's estate. *Wirtz*, 2000 ND 59, ¶ 14, 607 N.W.2d 882. Under N.D.C.C. § 13–02.1–05(1) of the Uniform Fraudulent Conveyance Act, a debtor's transfer of property is constructive fraud as to a creditor if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time of, or became insolvent as a result of, the transfer. *See Farstveet v. Rudolph*, 2000 ND 189, ¶ 20, 630 N.W.2d 24.

[¶ 11] We conclude N.D.C.C. § 30.1–18–10 and N.D.C.C. ch. 13–02.1 authorize the Department, as an intervenor in the Estate's action against Robert and Doug Bergman, to void Lucille Bergman's gifts because the Department was a creditor and Lucille Bergman made those transfers without receiving a reasonably equivalent value in exchange for the transfers, which rendered her estate insolvent to pay the Department's claim for Medicaid benefits provided to Carl Bergman. *See* N.D.C.C. §§ 13–02.1–01; 13–02.1–02; 13–02.1–03; 13–02.1–05; and 13–02.1–07. We reject the trial court's broad conclusion that any assets that Carl Bergman transferred to Lucille Bergman were her separate property to do with as she pleased. Rather, we conclude the assets traceable to Carl Bergman are subject to a claim against Lucille

Bergman's estate for the Medicaid benefits provided to Carl Bergman.

[¶ 12] Doug and Robert Bergman argue that allowing the Department to pursue funds outside of a community spouse's estate at the time of the community spouse's death would set a dangerous precedent because community spouses would not know whether they could spend their money. However, there is a difference between spending money for something which has a reasonably equivalent value and gifting property that is subject to a creditor's claim. Accepting the Bergmans' argument would circumvent the purposes of the impoverished spouse provisions of Medicaid law by permitting an institutionalized spouse to receive Medicaid benefits after transferring assets to a community spouse and precluding the Department from recouping any remaining part of those assets after the community spouse died.

### III

[¶ 13] We reverse the judgment dismissing the Department's claims, and we remand for proceedings consistent with this opinion.

[¶ 14] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM and WILLIAM A. NEUMANN, JJ., and RONALD E. GOODMAN, District Judge, concur.

[¶ 15] The Honorable RONALD E. GOODMAN, District Judge, sitting in place of MARING, J., disqualified.